In The United States District Court
Northern District Of Illinois
Eastern Division



# FILED

MAR 22 2016 🅰️

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Jabari Lamar Jackson

Plaintiff,

Vs.

No. 15 –CV-6990

Judge,

Chicago Public Schools et. al &

Hon. Harry D. Leinenweber

The Illinois State Board Of Education et. al.

Defendants,

Jury Trial Demand

## Introduction

Now comes the Plaintiff Kimyuna Jackson complaining on behalf of the minor child Jabari

Lamar Jackson on four counts to be explained further in the compliant. This case aroused after

the parent of the minor child wrote two letters to Chicago Public Schools asking for the status of

an IEP meeting that took place Oct 17, 2014. The Defendant never responded to the parents'

concerns of her child's developmental educational needs, and the child was later sexually

assaulted. The Defendants had no intentions of providing the minor child Jabari Lamar Jackson

with the education he deserve in accordance to IDEA. The Defendants only intentions was to let

the child sit ideally until they were able to employ staff members to write and IEP. The

Defendants accepted Jabari into their program knowing that they were not capable of educating,

substituting, or creating a conducive learning environment for the Plaintiff Jabari Lamar Jackson

which is a child with a developmental delay. The Defendants had known that the Plaintiff was

exceptional from the first day of the 2014-2015 school year. The next name Defendant the ISBE

during a Due Process pre-hearing conference told the Plaintiff that she is going to be honest, she

doesn't know what and Independent Education Evaluation is. After that, the Defendant started to

establish obvious bias towards the case involving the minor child Jabari Lamar Jackson.  The Plaintiff hereby incorporates each paragraph to be true here on:

<u>Compliant at Law</u>

1.  Plaintiff's cause of action arise under 34 C.F.R. 104.34(a) Section 504 Free and Appropriate Education Academic Setting.

2.  Plaintiff also finds cause under federal rule18 U.S.C § 2243(a)(b) Sexual Abuse of a Minor Child

3.  Plaintiff also finds cause 20 U.S.C. §1414(a) (l) Violation of IDEA where IEP timeline was not met.

4.  Unethical Bias in Due Process hearing 105ILCS 5/14-8.02

5.  Jurisdiction is proper under 28 U.S.C. § 1331, federal question jurisdiction.

6.  Venue is proper under 28 U.S.C § 1391, for the Plaintiff resided in this judicial district during the time in which the situation occurred Plaintiff has attached an apartment lease to the compliant as exhibit A, Defendants Chicago Public Schools et.al, and the assign hearing officer for the ISBE reside in this judicial district and upon information and belief, the Defendants Chicago Public Schools, and Defendant Illinois State Board Of Education continue to reside in this judicial district other than the corporation identity located in Springfield Illinois.

7.  The events giving rise to this lawsuit took place on or around August 29, 2014 the minor child Jabari Lamar Jackson was sent to Wadsworth Elementary School by the registration offices of Chicago Public Schools to register her son for pre-kindergarten. That day the

parent of the minor child advised all individuals about the fact that the Plaintiff has a developmental delay.

8. The parent of the minor child gave the Defendant Wadsworth Elementary School the child's Independent Education Evaluation. The Defendant made a copy of it and created a school folder for the Plaintiff.

9. The parent of the Plaintiff was advised that the case manager of Wadsworth Elementary School would contact her in regards to the special education needs for the child.

10. On the first day of classes for the 2014-2015 school year. The parent of the Plaintiff picked up the child and spoke with the teacher, Ms. Atkins briefly about Jabari's developmental delay.

11. The parent's next interaction with the teacher, other than on the playground after school daily to pick up the Plaintiff, had been a week later. On or around Sept 11, 2014 the parent of the plaintiff received a phone call from the teacher because the child had been sick.

12. The parent of the Plaintiff picked the Plaintiff up from school and took him to the hospital. Ms. Atkins walked the parent outside of the classroom, during that time the teacher explained that she was glad that the parent had picked up the Plaintiff because most parents leave them at school.

13. The parent of the Plaintiff explained to her again, that her child has a developmental delay. Then took the child to HOPE Children Hospital to be treated for a virus.

14. The parent of the Plaintiff continued to speak with the teacher daily after school about the child's adjustments until mid Oct 2014 when the Plaintiff then received bus services.

15. On or around Oct 17, 2014 and IEP meeting took place at Wadsworth Elementary School. The Plaintiff has attached a letter from Janell Harper the case manager at Wadsworth Elementary School as exhibit B.

16. This letter gives a description of the services the Plaintiff needs and are or should be receiving. The letter also reads that An IEP meeting will take place on 10/17/2014, at Wadsworth STEM, room 209.

17. The parent attended the IEP meeting Oct 17, 2014 and spoke with all individuals that were schedule to participate. The parent has attached the Parent /Guardian Notification of Conference as exhibit C. This letter names all individuals that were to participate in the meeting on Oct 17, 2014.

18. On 10/29/2014 the parent of the Plaintiff wrote a letter to Janelle Harper asking why the Defendant wasn't willing to comply with their own policies. This letter is attached as exhibit D. There had been an IEP meeting 10/17/2014 in a letter the parent had been told the Plaintiff would be receiving compartmental services until an IEP was written. However, verbally the case manager continue to tell the parent that the meeting Oct 17, 2014 wasn't an IEP meeting.

19. On 11/04/2014 the parent of the Plaintiff wrote a second request to the Defendant this letter is attached as exhibit E. This letter details the attempts the parent of the Plaintiff had been making. This letter also reads, I am hereby making a second request in writing for the reason why your organization didn't comply with the IEP meeting as written on the letter head of your organization and signed by yourself.

20. The parent of the Plaintiff received no reply and contacted the Illinois State Board of Education.

21. In mid-December 2014 the parent of the Plaintiff filed a formal compliant with the Illinois State Board of Education. The parent of the Plaintiff later change this compliant from a formal compliant to a due process compliant.

22. On January 6, 2015 the Plaintiff came home from school and told his mother that someone name Nyasia Jones had stuck their hands in his pants and felt on his anus. The parent ask the child to give a description of the person. The plaintiff described the person as being taller than you and me.

23. The parent of the minor child then took the plaintiff into the Chicago Police Department to report this offence, and was given a police report. Then later contacted by Arnold Weddington. The Police report is attached as exhibit F. There is also a child advocacy report which can only be retrieved by the parent during court procedures with a court order from any Judge needing such for purposes of the Plaintiff.

24. On or around January 11, 2015 the parent of the minor child spoke with the Defendant Chicago Public Schools about the incident and requested a safely plan. The parent was advised by Mr. Cooper whom had been a manager over the safety department of their organization that the Defendant would in fact provide the child with a safety plan upon his entrance into the school, all the parent would have to do is sign it.

25. The parent returned to the school the following Monday after January 11, 2015 and requested the safety plan for the Plaintiff. The administration expressed that they didn't

know what a safety plan was. The parent then asked that the Defendant to remove the Plaintiff from the classroom and took the Plaintiff home.

26. The parent of the Plaintiff then contacted the special education department of the Defendant to find out if she had any other options, as her child had been abused by someone at Wadsworth Elementary School.

27. The parent was always advised that she would receive a call back by the administration on what her option for the Plaintiff could be. However, the Defendant never returned her call, as result of such the Plaintiff had been unable to return to school due to the Defendants inability to provide the Plaintiff with a safety plan.

28. The parent of Plaintiff contacted the Illinois State Board of Education in regards to this matter to find out if this could be associated with the compliant that she had on file all ready, as now the plaintiff was out of school due to the Defendant not wanting to provide the Plaintiff with a safety plan.

29. The Plaintiff was first told by Marcia Kelly whom at that time was an employee of the Illinois State Board of Education that the ISBE doesn't handle sex abuse issues these are matters that should be discussed with other entities.

30. The parent of the Plaintiff then submitted a Due Process Compliant to the Illinois State Board of Education and included the incident that occurred on 1/6/2015. The parent submitted the Due process compliant on 1/21/2015. The compliant is attached as exhibit G.

31. Along with the compliant the parent submitted all evidence such as letter she wrote to the Defendant, and received from the Defendant to support her compliant.

32. The Plaintiff during this time was enrolled in Chicago Public Schools but was not in attendance due to the Defendant inability to provide the child with a safety plan or another environment for learning.

## Count One: 18 U.S.C § 2243(a) (b) Sexual Abuse of a Minor Child

33. On or around 1/6/2015 an employee of the Defendant or any competent child being educated at Chicago Public Schools during the same school day of the Plaintiff, touch the anus of the Plaintiff, in such a way that it was discomforting and sexual.

34. The plaintiff described this to the parent, the city of Chicago Police Department, DCFS, and it was described as being a sexual touch.

35. The Plaintiff has in the past and currently been diagnosed with a developmental delay which affects his receptive language abilities. Therefore the plaintiff is unaware of whether or not this was a good or bad touch. A psychological evaluation is attached as exhibited H.

36. During an investigation of this matter by the Chicago Police Department, the Defendant told the investigator Arnold Weddington that the person the Plaintiff named had been in fact an 8 year old student in attendance at Wadsworth Elementary School. The Defendant also explained to the officer that they had no idea of how Jabari could have possibly been in contact with this child since the child's class is located on the second floor, and the plaintiff's on the first floor, on the other side of the school. This report can be submitted to the courts if the parent is able to retrieve a court order.

37. During the DCFS investigation the Defendant explained that this person the Plaintiff described had been a four year old child in Jabari's' classroom. This was told to the

parent by Arlen Grant Brown whom is an administrator over the social workers from DCFS that investigated the parent claims of inappropriate supervision.

38. Therefore the Defendant gave false information to both DCFS and the city of Chicago Police Department to allude them from finding guilt or truly discovering who the person was that committed the sex offence.

39. The Defendant ignored the parent's request for information on her child's special education concerns, so that one of their employees could later have sex with her child on school grounds and cover it up. It's obvious with their conflicting stories to DCFS and the Chicago Police Department.

Wherefore, Plaintiff respectfully requests that this court grant judgment in her favor and against the Defendants, in an amount of 700 hundred thousand dollars, and awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the individual defendants in their (his/her) individual capacity, as well as any other relief this court deems just and appropriate.

Count Two: 34 C.F.R. 104.34(a) Section 504 Free and Appropriate Education Academic Setting

40. On or before September 23, 2014 the parent of the Plaintiff gave the case manager a doctor's note that stated the Plaintiff should receive services in 14 day due to his developmental delay. This letter has been attached exhibit I.

41. This letter had been one of many attempts of the parent to make certain that the Plaintiff had been placed into a safe learning environment that catered to the needs of his disability while he had been awaiting and updated IEP.

42. The Defendant did not place the child into a self- contain classroom even after receiving the child's IEP from District 88.

43. The Defendant had been knowledgeable of the fact that the child's previous IEP required a self-contain special education learning environment, and the Plaintiff still remained in Ms. Atkins classroom.

44. There had been no attempts to transfer the Plaintiff into an environment that accommodate his developmental delay by the Defendant.

45. By September 23, 2014 the Defendant had received and Independent Education Evaluation, IEP, a letter from the child's doctor, and numerous request from the parent to accommodate the child's needs and would not even provide the child with compartmental services, which are provided 10 days from the start of school for any child with special education requirements.

46. The Defendant knew that they had been unable to educate the Plaintiff based on his needs, but allowed the child to continue to sit in the school for purposes of manipulation of the parent.

47. The Defendant houses a special education department at its headquarters whom could have placed the child into a school that would satisfy his educational development. There had been enough information to do so by September 23, 2014.

48. It had been obvious that the school didn't have the staff to educate the Plaintiff or develop and IEP. This could be proven by looking at the parent notification letter. The letter sent on Oct 8, 2014, and the same letter on 02/06/2015 shows the staff members to have different names. These letters are attached as exhibit J.

49. It's obvious that Wadsworth Elementary School didn't have the staff to educate the Plaintiff and tried to hide this from the parent by not responding to her letters, or her request of who would be performing any educational services, assessment, etc. on her child during his school day.

50. During the Plaintiff's course of being educated at Wadsworth Elementary School he remained in a regular classroom. Which is not recommend on the Plaintiff's previous IEP.

Wherefore, Plaintiff respectfully requests that this court grant judgment in her favor and against the Defendants, in an amount of 500 hundred thousand dollars, and awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the individual defendants in their (his/her) individual capacity, as well as any other relief this court deems just and appropriate.

## Count 3: Unethical Biased in Due Process Hearing 105ILCS 5/14-8.02

51. During the Due Process proceeding the hearing officer continued to lead the Defendant Chicago Public Schools and change words. The hearing officer told the Plaintiff to not discuss the sex offence which had been a reason why there was a need for a safety plan.

52. The Defendant Chicago Public Schools during the mediation refused to implement a safety plan so that the Plaintiff may return to school.

53. The Defendant Illinois State Board of Education then ruled in favor of the Defendant Chicago Public Schools for biased reasons.

54. The Defendant the Illinois State Board of Education found fact in the testimony of the case manager, and the teacher where both had made claims to have discovered that the Plaintiff did in fact have a developmental delay.

55. The Defendant Chicago Public Schools made claims during a Due Process hearing that the parent never informed them of the child's impairment, and that in fact it had been the classroom teacher Ms. Atkins that discovered such impairment in the Plaintiff.

56. The defendant Chicago Public Schools did not discover the developmental delay associated with the Plaintiff. This was discovered in Jabari vs. District 88 where the district settled to pay for and Independent Education Evaluation due to the fact that the IEP lacked the required assessments. A copy of the summary judgment has been attached as exhibit k.

57. The defendant Illinois State Board of Education wrote that the parent never gave her evidence to support her claim, when in fact the parent submitted her evidence with the compliant to support the compliant.

58. The defendant Illinois state board of education contradicts these word at the bottom of her order. This order is attached to the compliant as exhibit L.

59. The Defendant made claims in her order that the Independent Education Evaluation doesn't make the child eligible for special education services, In DiBuo vs. Bd. of Educ. of Worcestor County, slip no S-01- 1311 (Nov.4, 2001). A case involving an IEE. The judge found that what the Board of Education had done constituted a denial of a free appropriate public education and was a serious violation of IDEA.

60. The Defendant Illinois State did not use any case law to support her findings in her ruling in the discussion of Independent Education Evaluation.

61. The parent of the Plaintiff throughout the proceedings was asked not to discuss the sex offence upon no circumstances to support her burden of proof. However, the defendant discussed the sex offence in her order, making it appear as if the parent didn't plead her child's case.

62. The defendant goes on and on throughout the order with bogus explanations to support her ruling. The Defendant ISBE even explains that the Defendant Chicago Public Schools missed the 60 day timeline but describes this as being due to the parent.

63. The Defendant Chicago Public Schools did not send the parent of the Plaintiff her copies of the record of the Due Process hearing because it supports the Plaintiffs claims of bias. This record was to be sent to the plaintiff 30 days after June 3, 2015.

64. IDEA has laws in place for the Defendant to proceed without the parent, therefore there would be no reason to miss the 60 day timeline. IDEA doesn't explain a rule that allots the Defendant days past the 60 day timeline even if the parent consent had been an issue.

65. In this case it wasn't. The Plaintiff has attached a consent form to the compliant as exhibit M

Wherefore, Plaintiff respectfully requests that this court grant judgment in her favor and against the Defendants, in an amount of 100 thousand dollars, and awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the individual defendants in their (his/her) individual capacity, as well as any other relief this court deems just and appropriate.

### Count 4: 20 U.S.C. §1414(a) (l) Violation of IDEA IEP 60 day timeline not met

66. The Defendant Chicago Public Schools did not met the 60 day required timeline to provide the Plaintiff and IEP. Therefore denying him an equal education throughout the whole process.

67. The Defendant Illinois State Board of Education supports these facts as findings in her order. The order has been previous submitted to the compliant in line 56.

Wherefore, Plaintiff respectfully requests that this court grant judgment in her favor and against the Defendants, in an amount of 5 thousand dollars, and awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the individual defendants in their (his/her) individual capacity, as well as any other relief this court deems just and appropriate.

Respectfully Submitted,

*Kimyuna Jackson*

In The United States District Court
Northern District Of Illinois
Eastern Division

Chicago Public Schools Law Department

1 North Dearborn Street

Suite 900

Chicago, Illinois 60602

Illinois State Board Of Education Law Department

100 West Randolph Suite 14-300

Chicago, Illinois 60601

Respectfully Submitted,

*Kimyuna Jackson*

512 Gregory Ln Apt 3B

Glendale Height, Illinois 60139

*(312)834-1016*



**UNFURNISHED**

# CHICAGO APARTMENT LEASE

*Exhibit A*

enant(s): **Kimyuna Jackson**

partment Address: 6720 S. Jeffery Blvd
Chicago, IL 60649

partment Number: #611

ate of Lease: 02/28/2014

ase Start Date: 02/28/2014  **Lease End Date:** 05/31/2015

lonthly Rate: **$650.00**  **Security Deposit:** **NONE**

ecurity Deposit Received By: _____n/a_____

**eating Cost Disclosure**

he cost of heating is the responsibility of the ☐ Tenant ☒ Lessor. The verage monthly cost of utility service projected by the utility providing the rimary source of heat in accordance with the requirements of applicable rdinances is $____0.00____.

Acknowledged _____

**wner/Agent Disclosure**

lanaging Agent: Tricap Chicago, LLC

lame, address & phone number of building agent or manager authorized to eceive notices, demands and service of process.

lame: Bryan Pritchard
hone Number: (312) 725-9440
ddress: 747 N. LaSalle, Suite 210
Chicago, IL 60654

Acknowledged _____

enant(s): _Kimyuna Jackson_ Date: 2/28/2014

enant(s): _____ Date: _____

enant(s): _____ Date: _____

enant(s): _____ Date: _____

essor: _Nicole Carey_ By: _____ Date: 2/28/14

**ead Warning Statement**

lousing built before 1978 may contain lead-based paint. Lead from paint, aint chips and dust can pose health hazards if not managed properly. Lead xposure is especially harmful to young children and pregnant women. Before enting pre-1978 housing, lessors must disclose the presence of known lead-ased paint and/or lead-paint hazards in the dwelling. Lessees must also eceive a federally approved pamphlet on lead poisoning prevention.

essor's disclosure (initial)

___NC___(a) Presence of lead-based paint and/or lead based paint hazards (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

☒ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

___NC___ (b) Records and Reports available to the lessor (check one below):

☐ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based hazards in the housing (list documents below):

☒ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's acknowledgement (initial)**

___(c) Lessee has received copies of all information listed above.

___(d) Lessee has received the pamphlet Protect Your Family From Lead in Your Home.

**Guarantee**

On _____ , in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned Guarantor hereby guarantees the payment of rent and the performance by Tenant, Tenant's heirs, executors, administrators, successors or assigns of all covenants and agreements of this Lease.

Guarantor:_____n/a_____ Date: _____

**1. Application.** Tenant covenants that all representations made in the Application for this Lease are incorporated into this Lease and made a part of it. Tenant covenants that all information contained in the Application is true and that this information was given as an inducement for Lessor to enter into this Lease, and therefore constitutes a material covenant.

Acknowledged _____

**2. Tenant Inspection Prior to Occupancy: Building Code Violations.** Tenant has inspected the Apartment and all common areas of the property to which Tenant has lawful access during the Lease Term, and is satisfied with their general condition and appearance. Tenant acknowledges that there have been no representations, promises or other undertakings by Lessor, or any agent of Lessor, made to induce Tenant to enter into this Lease, except those expressly made in writing, relative to the repairs, decorating, additions to, or removal of any portion of the Apartment or of the property. Tenant further acknowledges that attached hereto are copies, if any, of notices received from the City of Chicago during the twelve months prior to the date hereof concerning code violations, and copies of notices from any utility provider regarding termination of utility services.

Acknowledged _____

**3. The Rent.** Tenant shall pay the Monthly Rent to Lessor or Lessor's agent on the first day of each month in advance at the Lessor's address stated opposite (or at such other address as Lessor may designate in writing).

**4. Late Fee.** The Monthly Rent shall be automatically increased $10, plus 5% of the amount by which the Monthly Rent exceeds $500, as additional rent, if received by Lessor after the 5th of the month for which it is due.

**Additional Agreements:** Lease Group Riders and Addenda #1 and Lease Addendum #2 are attached and expressly made a part of this Lease Agreement. To he extent that any particular portion of this Lease Agreement, including any and all riders and addenda, conflicts with the Chicago Residential Landlord Tenant rdinance, the Ordinance controls with that particular portion, the remaining terms and provisions to remain in full force and effect.

## MOLD
Bleach is the best product for removing mold that forms around the edges of showers, tubs, on tile walls, around metal windows, and anywhere there is moisture. The easiest way to remove mold is to cut paper towels in half and fold them into one-inch strips. Dip each strip into the bleach bottle and hold your finger against it as you draw it out. Lay the bleach-soaked strips directly on the mold and leave them there for several hours. It works like magic. Remember to use rubber gloves, and air out affected rooms.

## HOUSE PLANTS
Be sure drip pans are kept under all plants. Water run-off will stain or damage most surfaces.

## KITCHEN COUNTERS
To avoid costly damage from nicks and cuts in counter tops, please use a cutting board at all times. **Tenants will be responsible for any damages to kitchen counters during move out.**

## CERAMIC TILE - MOLDED TUB AND SHOWER WALLS
To clean ceramic tiles and molded fixtures tiles follow these instructions:
- Dilute 1 part white vinegar in 5 parts water.
- **Never use scrubbing cleansers like Comet or AJAX on molded fixtures**, as these products will permanently scratch the surfaces.
- Use a soft sponge and apply the solution to the molded areas

## MINI BLINDS
When cleaning mini blinds, don't soak them - the finish may bubble and peel. Spray them with a mild soap & water solution and wipe them. You can buy a spray cleaner which is inexpensive and easy to use, making cleaning a breeze. Weekly dusting or wiping can save a lot of work later.

## SMOKE DETECTORS
Tenants are responsible for keeping fresh batteries in smoke detectors. We recommend changing batteries twice a year.

## WOOD DECKS / PORCHES
If you have planters or pots, please put raised trays under them so that they are off the deck a few inches. This will to allow air to flow beneath the pot, and to prevent water run-off from rotting the deck.

## HARDWOOD FLOORS
**Never use a mop or oil for cleaning hardwood floors.** Use a soft cloth to avoid scratching the surface. It is best to sweep and dust regularly to avoid build up of dirt. We recommend cleaning your hardwood floors in your home with a small amount of vinegar in water. Periodically clean floors with Murphy's oil following the directions on the label. We encourage the use of throw rugs in front of the sink and the stove to protect these areas from water and grease.

## MARBLE AND GRANITE
Marble is a porous material. Be careful that water run-off from plants is not left standing on the surface since it will permanently stain the marble. **Never use any acidic or abrasive cleaning products including vinegar.** It is best to use warm water and a sponge with a small amount of dishwashing liquid such as Dawn or Joy.

**I have read and agreed to the Rules and Regulations, and understand that if any of the listed rules are violated it could result in termination of lease.**

Tenant: _____ Date: 2/28/2014

Tenant: _____ Date: _____

Tenant: _____ Date: _____

Tenant: _____ Date: _____



Tricap Chicago, LLC
747 N. LaSalle Street, Suite 210
Chicago, IL 60654
Phone: (312) 725-9440 Fax: (773) 409-5222
www.tricapchicago.com

## Chicago Apartment Lease Checklist and Acknowledgement of Documents Received

| X | Document | Acknowledgement of receipt (initial) |
|---|---|---|
| ☑ | Chicago Apartment Lease | KJ ___ ___ ___ |
| ☑ | Heating Cost Disclosure | KJ ___ ___ ___ |
| ☑ | Security Deposit Receipt (if applicable) | KJ ___ ___ ___ |
| ☑ | List of Building Code Violations (if applicable) | KJ ___ ___ ___ |
| ☑ | Lead Based Paint Disclosure | KJ ___ ___ ___ |
| ☑ | Protecting your Family from Lead Based Paint Hazards | KJ ___ ___ ___ |
| ☑ | Chicago Residential Landlord Tenant Ordinance Summary | KJ ___ ___ ___ |
| ☑ | Rate of Interest on Security Deposits for previous 3 years | KJ ___ ___ ___ |
| ☑ | Renter's Insurance Affidavit | KJ ___ ___ ___ |
| ☑ | Drug Free Housing Addendum | KJ ___ ___ ___ |
| ☑ | Tenant Maintenance Charges | KJ ___ ___ ___ |
| ☑ | Disclosure & Agreement to Pay for Utility Service | KJ ___ ___ ___ |
| ☑ | Move in/Move out Instructions | KJ ___ ___ ___ |
| ☑ | Tenant Handbook – Rules & Regulations | KJ ___ ___ ___ |

Tenant(s) hereby acknowledge(s) that all parties entering into the lease agreement are in complete and total understanding of all of the rules, regulations, disclosures, and terms of the lease documents pertaining to the rental of property at 6720 S. Jeffery Blvd #611, Chicago, IL, 60649.
Tenant(s) also acknowledge(s) that they have received complete and fully executed copies of all lease documents, riders, disclosures, and addenda stated above.

Tenant(s): _Kimyina Jackson_____ Date: _2/28/2014_

Tenant(s): _____ Date: _____

Tenant(s): _____ Date: _____

Tenant(s): _____ Date: _____

Lessor:

By: _Nicole Cary_____ Date: _2/28/14_

Exhibt B ①



### Chicago Public Schools

10/08/2014

Dear Kimyuna Jackson,

Jabari Jackson, ID#50405517, 09/18/2009 had recently transferred into James Wadsworth Elementary School. On 08/29/2014 Jabari's IEP (dated 05/23/2013) from Maywood School District was reviewed. The Chicago Public Schools is unable to implement the above referenced IEP as it is written. The following services will be provided to Jabari until the new IEP is developed:

List comparable services here:
Mathematics and Reading/language Arts from the diverse learner teacher and speech language therapy from speech pathologist.

An IEP meeting will take place on 10/17/2014, 10:30 AM, at Wadsworth STEM, room 209.

Attached please find a copy of your procedural safeguards and notice of conference. If you have any questions please contact , case manager at

Sincerely,

Janelle Harper
Janelle Harper
Case Manager
James Wadsworth Elementary School

Exhibit C

# Chicago Public Schools
# Parent/Guardian Notification of Conference

Date: 10/08/2014          Student's Name: Jabari Jackson          Birth Date: 09/18/2009

Dear Kimyuna Jackson,

In order to discuss the education needs of your child, you are invited to attend a conference to be held at:

Date & Time: 10/17/2014, 10:30 AM          Location: James Wadsworth Elementary School, room 205

You are a participant on the IEP Team which will meet to address the purpose as indicated in the next section. You have the right to bring other individuals who have knowledge of special expertise regarding your child. If you plan to bring other individuals, please notify the individual indicated below prior to the meeting so arrangements and accommodations for participants can be made. If these meeting arrangements are not agreeable and/or you require an interpreter or translator, please contact the individual indicated below.

The purpose of this conference is:
• Review your child's educational status and determine what additional data, if any, is needed to complete your child's evaluation.
• Assessment team will talk with parent to discuss services her son will receive until the special re-evaluation is completed. Assessment planning /Consent meeting.

The invited individuals and their titles are listed below. If one of the individuals listed below is unable to attend due to unforeseen circumstances, the district will designate an appropriate and suitable replacement to attend the IEP meeting. A student, age 14 ½ and older, must be invited to any meeting if the purpose of the meeting is to consider transition service needs.

| Title | Name |
|---|---|
| Case Manager: | Janele Harper |
| District Representative: | Janele Harper |
| Special Education Teacher or Provider: | Corwyn Moore |
| Nurse: | Brenda Carter |
| Regular Education Teacher: | Rhonda Atkins |
| Evaluation Representative: | Matthew Pflaum |
| Parent/Guardian: | Kimyuna Jackson |
| Psychologist: | Matthew Pflaum |
| Social Worker: | Benita Whitfield |
| Student: | Jabari Jackson |
| Speech-Language Pathologist: | Jordan Owans |

You and your child have protection under the procedural safeguards. The school district must provide you a copy of the Explanation of Procedural Safeguards once a year. Please contact the district if you need a copy of the Explanation of Procedural Safeguards.

Sincerely,

Name: Janele Harper
Title: Case Manager
School: James Wadsworth Elementary School
School Phone Number: (773) 535-0750

 

**Kimyuna Jackson**

6720 S Jeffery Blvd. Apt 611
Chicago, IL 60649
Phone: 312-834-1016

▶ **Chicago Public Schools**

Wadsworth Elementary School
6650 S Ellis
Phone: 773-535-0730

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Janelle Harper,

On or around August 29, 2014 I registered my child Jabari Lamar Jackson into Wadsworth Elementary School expressing my concerns verbally in regards to an Independent Education Evaluation Jabari received from a previous district. I feel that this Independent Education Evaluation should have been enough information to start compartmental service for Jabari Lamar Jackson. Yet, Chicago Public Schools have other polices. In my experience thus far with Chicago Public Schools it appears that this organization supports and stands by all procedures through writing. Therefore, on 10/17/2014 as written in your letter and IEP meeting should have occurred at Wadsworth STEM in room 2009. Nothing of the happen, nor is this organization better known as Chicago Public Schools complying with the list of comparable services that were suggested by yourself. This means that you have not complied with your own procedures and policies. I am requesting a written explanation of why such IEP meeting didn't occur, as written on your letter dated 10/8/2014. I have attached a copy of this letter.

Thank You,
Kimyuna Jackson

Cc. Principal Shabazz
cc. CEO Barbara Bennett

10/29/2014



Exhibit E

Kimyuna Jackson
6720 S Jeffery BLVD Apt 611
Chicago, Illinois 60649
11/04/2014

Janelle Harper
Chicago Public Schools
James Wadsworth Elementary School
Chicago, Illinois 60649

Re: Second request for IEP Meeting as written by yourself in a letter on 10/08/2014
On October 29, 2014, I sent you a written requesting your organization honor the letter you sent on 10/08/2014 claiming that an IEP meeting will take place on 10/17/2014. Instead of a written explanation of why such IEP meeting didn't occur. I received an updated assessment plan, along with another consent form in which I have already signed. I am also still wanting to know what days my child are receiving these services.

I am hereby making a second request that you send in writing the reason why your organization didn't comply with the IEP meeting as written on the letter head of your organization and signed by yourself. I have also attached a copy of all forms given and signed by yourself on or before that day.

If I have not received a response within 20 days of this notice. I will proceed to other venues associated with Chicago Public Schools to get this matter resolved.

Please mail the information to:

Kimyuna Jackson
6720 S Jeffery Blvd Apt 611
Chicago, Illinois 60649

As noted in my first request, I would like all correspondence in writing.

Sincerely,


Kimyuna Jackson


c. Principal Shabazz

Cc. CEO Barbara Bennett

| 1 OFFENSE/INCIDENT - PRIMARY CLASSIFICATION | 2 SECONDARY CLASSIFICATION | 3 R.D. NO. |
|---|---|---|
| CRIMINAL SEXUAL ABUSE | SEX OFFENSE | HY - 106212 |

Exhibit 5

| 4 ADDRESS OF OCCURRENCE | | 5 DATE OF OCCURRENCE - TIME | 6 BEAT OF OCCUR | 7 BEAT/UNIT ASSK |
|---|---|---|---|---|
| NO 6650 | STREET S. ELLIS | APT NO | DAY MO YR 0800 / 1500 | 311 |

8 TYPE OF LOCATION OR PREMISE WHERE OFFENSE OCCURRED (GIVE NAME OF LOCATION IF APPLICABLE)

CPD 66.048-96

**IMPORTANT: KEEP THIS NOTICE FOR YOUR PERSONAL RECORDS**

CASE NAME - PEOPLE OF THE STATE OF ILLINOIS/CITY OF CHICAGO vs. _____

If an arrest has taken place, the following is your court information: Date: _____ Time: _____ Court Branch: _____ Court Loc. : _____

If you need more help call the Victim/Witness Assistance Program of the Cook County State's Attorney's Office at (773) 869 - 7200.

**VICTIM INFORMATION NOTICE/ CHICAGO POLICE DEPARTMENT**     **THIS IS NOT AN OFFICIAL POLICE REPORT - IT IS FOR INFORMATION PURPOSES ONLY**

Your case is on file with the Chicago Police Department under the above listed R.D. Number. Refer to this number whenever you are communicating with the Chicago Police Department concerning this incident. Your case will be assigned for follow-up investigation based upon specific facts obtained during the initial investigation. The presence of these facts can predict whether a comprehensive follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property. Your case will be reviewed and retained to determine if individuals active in the area can be identified. *A detective will not routinely contact you unless additional information is required or your further assistance is needed.*

**TO REPORT ADDITIONAL INFORMATION**

If you have knowledge of specific facts which might assist in the investigation of your case, please contact the unit noted below:

| | FOR PROPERTY CRIMES | FOR VIOLENT CRIMES | FOR YOUTH INVEST. |
|---|---|---|---|
| AREA 1 | ☐ (312) 747-8382 | ☐ (312) 747-8380 | ☐ (312) 747-8385 |
| AREA 2 | ☐ (312) 747-8273 | ☐ (312) 747-8271 | ☐ (312) 747-8276 |
| AREA 3 | ☐ (312) 744-8263 | ☐ (312) 744-8261 | ☐ (312) 744-8266 |
| AREA 4 | ☐ (312) 746-8253 | ☐ (312) 746-8251 | ☐ (312) 746-9259 |
| AREA 5 | ☐ (312) 746-8362 | ☐ (312) 746-8282 | ☐ (312) 746-8365 |

BOMB & ARSON (all Areas) ☐ (312) 746-7619

**COPY OF THE REPORT:** The above listed R.D. Number may suffice for insurance purposes. However, there may be instances when a copy of the case report is desired. A copy of the case report which verifies that an incident of injury, loss or damage has been reported to the Chicago Police Department must be obtained after 14 working days from the date the incident was reported. To obtain a copy of the report, send a check or money order payable to the *DEPARTMENT OF REVENUE - CITY OF CHICAGO*" in the amount of $.50 and a self-addressed stamped return envelope to: Chicago Police Department Headquarters, Records Inquiry Section, 1st Floor, 3510 South Michigan Avenue, Chicago, Illinois 60653. Include the following information with your request: 1) Victim's name and address (or person reporting crime), 2) Type of incident, 3) Address of occurrence, and 4) R.D. Number.

**MAKE THE RIGHT CALL:** To report a crime in progress or other emergency that requires immediate police response, call 911. To report non-emergency situations, call the Police Department at 311 within City limits, or if outside the City limits, call (312) 746-6000.

**CHICAGO ALTERNATIVE POLICING STRATEGY (CAPS)     SAFE NEIGHBORHOODS ARE EVERYBODY'S BUSINESS**

The police alone cannot solve the problems of crime in our City. It takes an active and informed community working with the police and other City agencies to really make a difference. Join your neighbors and your neighborhood police officers as we work together to reduce crime and improve the quality of life in our City. Become part of the CAPS team in your community. To find out how, call:

**CAPS HOTLINE:** (312) 744-CAPS [(312) 744-2277] or 311

More information about CAPS is available on the World Wide Web at http://www.cityofchicago.org/CAPS.
You live on Beat _____. Your next Beat Community Meeting will be held on (date / time) _____
_____ at (location) _____

**TELECOMMUNICATIONS DEVICE FOR THE DEAF/TELETYPE (TDD/TTY)**
Hearing-impaired persons who possess such equipment may communicate with the Chicago Police Department 24 hours a day by calling (312) 746 - 9715. Hearing- impaired persons in need of assistance during normal business hours may also contact their local police district or the Preventive Programs and Neighborhood Relations Division at (312) 745-6885.

**OBTAINING A WARRANT OR SUMMONS FOR CRIMINAL CHARGES**
If an arrest is made, you will be informed of the date, time, and location of the court proceedings at which your appearance will be required. When you report a crime and an arrest is not made, you may go in person to the appropriate court listed below to request that criminal proceedings be initiated by way of a warrant or summons. Bring this Victim Information Notice and any other relevant information, such as the offender's name, physical description, and home address to the warrant officer assigned to the court between 8:30 am and 11:30 am Monday through Friday (excluding court holidays). The warrant officer will then assist you in the process of obtaining the warrant or summons.*

| Police District of Occurrence | | Court Branch for Warrant or Summons | |
|---|---|---|---|
| ☐ | 14,15,16,17,25 | Branch 23 | 5555 W. Grand Ave. |
| ☐ | 18,19,20,23,24 | Branch 29 | 2452 W. Belmont Ave. |
| ☐ | 2,7,8,9,21 | Branch 34 | 155 W. 51st St. |
| ☐ | 3,4,5,6,22 | Branch 35 | 727 E. 111th St. |
| ☐ | 1,10,11,12,13 | Branch 43 | 3150 W. Flournoy St. |

* For incidents relating to domestic violence, a warrant/summons will only be issued from the Domestic Violence Court located at 1340 S. Michigan, on the first floor.

**AUTOMATED VICTIM NOTIFICATION (AVN)**
The County of Cook has a tollfree, multilingual, 24 -hour Automated Victim Notification System. To obtain information about a defendant's court date or custody inside of Cook County Jail, call: **1-877-846-3445.** *Do not depend only on the AVN for your safety. If you feel that you may be in danger, take precautions as if the defendant has already been released.*

**ILLINOIS CRIME VICTIMS NOTIFICATION**
Innocent victims of violent crime may be eligible to receive benefits from the Illinois Crime Victims Compensation Program for such costs as medical, funeral, loss of support and wage loss. *NO RECOVERY IS PROVIDED FOR PROPERTY LOSS OR DAMAGE, NOR FOR PAIN OR SUFFERING.* To apply or to determine whether one qualifies, the victim, or if deceased, a relative or dependent, must contact the Illinois Attorney General's Office. Further information and claim forms can be obtained from the Crime Victims Compensation Program, Office of the Attorney General of Illinois, 100 West Randolph Street, 13th Floor, Chicago Illinois 60601, or by calling (312) 814-2581.

**RECOVERY OF PROPERTY - STOLEN VEHICLE RECOVERED**
The Chicago Police Department must be notified *IMMEDIATELY*, via the "911" emergency number, when property reported lost or stolen is recovered.

**CREDIT CARDS - CHECKS, LOST OR STOLEN**
Immediately notify the concerned credit card issuer or bank by telephone to reduce the possibility of being liable for the unauthorized use of your lost or stolen credit card or check. It is suggested that you also inform the credit card issuer or bank in writing as a follow-up measure to ensure proper notification.

| 1. OFFENSE/INCIDENT—PRIMARY CLASSIFICATION | | 2. SECONDARY CLASSIFICATION | | 3. R.D. NO. |
|---|---|---|---|---|

| 4. ADDRESS OF OCCURRENCE | | | APT. NO. | 6. DATE OF OCCURRENCE – TIME | 7. BEAT OF OCCUR. | 8. BEAT/UNIT ASSIGN |
|---|---|---|---|---|---|---|
| NO. | DIR. | STREET | | DAY  MO.  YR. | | |

9. TYPE OF LOCATION OR PREMISE WHERE OFFENSE OCCURRED (GIVE NAME OF LOCATION IF APPLICABLE)

## IMPORTANTE: RETENGA ESTA NOTIFICACION PARA SU ARCHIVO PERSONAL

**NOMBRE DEL CASO - LA GENTE DEL ESTADO DE ILLINOIS/LA CIUDAD DE CHICAGO vs.**

Si un arresto ha sucedido, lo siguiente es su información para corte: **Fecha:** \_\_\_\_ **Hora:** \_\_\_\_ **Sucursal de corte:** \_\_\_\_ **Localidad de corte:** \_\_\_\_

Si necesita mas ayuda llame al Programa de Asistencia de Victima / Testigo de Cook County Oficinia del Procurador del Estado (773) 869 - 7200.

**AVISO INFORMATIVO PARA LA VICTIMA/DEPARTAMENTO DE POLICIA DE CHICAGO**   *Este no es un informe policiaco oficial - Es solamente a propósito de información*

Su caso estará en archivo con el Departamento de Policia de Chicago bajo el número R.D. escrito arriba. Refiérase a este número cada vez que se comunique con el Departamento de Policia de Chicago con referencia a este incidente. Su caso será asignado para una continuada investigación basado en los datos específicos obtenidos durante la investigación inicial. La presencia de estos datos puede indicar si la continuación de la investigación resultará en la probabilidad del arresto y la prosecución del(os) sospechoso(s) o el recobro de los bienes. Su caso será revisado y conservado para determinar si criminales activos en el área pueden ser identificados. Por lo rutinario, un detective no lo contactará a menos que se requiera información adicional o su asistencia ulterior es necesaria.

### PARA NOTIFICAR INFORMACION ADICIONAL
Si usted tiene conocimiento de datos específicos que puedan ayudar en la investigación de su caso, por favor póngase en contacto con la unidad indicada abajo:

| | CRÍMENES ALA PROPIEDAD | CRÍMENES VIOLENTOS | INVESTIGACIONES DE MENORES |
|---|---|---|---|
| AREA 1 | ☐ (312) 747-8382 | ☐ (312) 747-8380 | ☐ (312) 747-8385 |
| AREA 2 | ☐ (312) 747-8273 | ☐ (312) 747-8271 | ☐ (312) 747-8276 |
| AREA 3 | ☐ (312) 744-8263 | ☐ (312) 744-8261 | ☐ (312) 744-8266 |
| AREA 4 | ☐ (312) 746-8253 | ☐ (312) 746-8251 | ☐ (312) 746-8256 |
| AREA 5 | ☐ (312) 746-8362 | ☐ (312) 746-8282 | ☐ (312) 746-8365 |

BOMBAS Y CRÍMENES DE INCENDIO   ☐ (312) 746-7619

### COPIA DEL REPORTE (INFORME)
En el vez el Número R.D. escrito arriba sea suficiente a propósito del seguro; sin embargo, podrán haber instancias en las que una copia del reporte (informe) del caso sea deseado. Una copia del reporte del caso que verifica que un incidente de lesión o avería, pérdida o daño ha sido notificado al Departamento de Policia de Chicago puede obtenerse después de 14 días de trabajo desde la fecha en que el incidente fue reportado. Para obtener una copia del informe, mande un cheque o giro pagadero al *DEPARTMENT OF REVENUE - CITY OF CHICAGO* por el importe de $.50 y un sobre con un sello, y con su nombre y dirección escrito al: Chicago Police Department Headquarters, Records Inquiry Section, 1st Floor, 3510 South Michigan Avenue, Chicago, Illinois 60653.

Incluya la siguiente información con su pedido: 1) Nombre y dirección de la victima (o persona que reportó el crimen), 2) Tipo de incidente, 3) Dirección del incidente, 4) Número del R.D.

### PARA LA LLAMADA CORRECTA
Para reportar un crimen en progreso y otras emergencias que requiere respuesta de la policía inmediata, llame 911. Para reportar llamadas de no emergencia, llame al departamento de policía a 311 (dentro de la ciudad) o (312) 746-6000 (fuera de la ciudad.)

### LA ESTRATEGIA ALTERNATIVA PARA LA VIGILANCIA DE CHICAGO
**LA SEGURIDAD DEL BARRIO ES RESPONSABILIDAD DE CADA UNO**

Solo, la policía no puede solucionar todos los problemas del crimen en nuestra ciudad. Es necesario que un comunidad activa e trabaje colabore con la policía y otros departamentos de la Ciudad para ser eficaces. Únase a los vecinos y a los oficiales de la policía de su barrio y trabaje junto con ellos para reducir el crimen y mejorar la calidad de vida de nuestra ciudad. Llégase parte del equipo de CAPS en su comunidad. Para más información, llame al:

**CAPS LINEA DIRECTA:**    (312) 744-CAPS [(312) 744-2277] o 311

Más información acerca de CAPS se encuentra en la Red Mundial de Información Cibernética (World Wide Web):
http://www.cityofchicago.org/CAPS

Usted vive en la Ronda \_\_\_\_ La próxima reunión de su Ronda será el (fecha y hora) \_\_\_\_ en el (lugar). \_\_\_\_

### APARATO DE TELECOMUNICACION PARA SORDOMUDOS/TELETIPO (TDD/TTY)
Personas menoscabo de oir que posean tal aparato pueden comunicarse con el Departamento de Policia de Chicago las 24 horas del día por llamar al (312) 746-9715. Personas menoscabo de oir que necesiten ayuda durante las horas de trabajo pueden comunicarse con su distrito de policía o la Division de Programas Preventivos y Relaciones para los Barrios a (312) 745 - 6885.

### OBTENCIÓN DE UNA AUTORIZACIÓN O DE UN EMPLAZAMIENTO PARA LAS CARGAS CRIMINALES
Si se hace una detención, usted será informado de la fecha, de la época, y de la localización de los procedimientos de la corte en los cuales su aspecto será requerido. Cuando usted divulga un crimen y una detención se hace, usted puede entrar en persona a la corte apropiada enumerada abajo para solicitar que los procedimientos criminales estén iniciados por una autorización o un emplazamiento. Traiga este aviso de la información de la victima y cualquier otra información relevante, tal como el nombre del delincuente, descripción física, y la dirección casera al oficial de la autorización asignado a la corte entre 8:30 y 11:30 lunes a viernes (excepto días de fiesta de la corte). El oficial de la autorización entonces le asistirá en el proceso de obtener la autorización o el emplazamiento.*

| Distrito del policía de la ocurrencia | | Rama de la corte para la autorización o el emplazamiento | |
|---|---|---|---|
| ☐ | 14,15,16,17,25 | Rama 23 | 5555 W. Grand Ave. |
| ☐ | 18,19,20,23,24 | Rama 29 | 2452 W. Belmont Ave. |
| ☐ | 2,7,8,9,21 | Rama 34 | 155 W. 51st St. |
| ☐ | 3,4,5,6,22 | Rama 35 | 727 E. 111th St. |
| ☐ | 1,10,11,12,13 | Rama 43 | 3150 W. Flournoy St. |

*Para los incidentes referentes a violencia doméstica, un warrant/summons será publicado solamente en la corte doméstica de la victima situada en 1340 S. Michigan, en la primera planta.

### SISTEMA AUTOMATIZADO DE NOTIFICACION PARA VICTIMAS
El Condado de Cook tiene un Sistema de Notificación Automática a Victimas a través de una llamada gratis 24 horas al día en varios idiomas. Para obtener información acerca de el día de corte para los demandados o para custodia dentro de la Cárcel del Condado de Cook, llame al: 1-877-846-3445. *No dependa solamente en "AVN" para su seguridad. Si usted cree que puede estar en peligro, tome precauciones com si el demandado ya hubiera sido puesto en libertad.*

### NOTIFICACION DE VÍCTIMAS DEL CRIMEN DE ILLINOIS
Las víctimas inocentes de crímenes violentos pueden ser elegibles para recibir beneficios del Programa de Compensación para Víctimas de Crimen de Illinois por tales gastos como el médico, funerario, pérdida de manutención y pérdida del salario. *NO SE PROVEE RECUPERACION POR DANO O DANO DE LA PROPIEDAD COMO TAMPOCO POR DOLOR O SUFRIMIENTO.* Para aplicar o para determinar si una califica, la víctima o, si falleció, un pariente o dependiente debe contactar a la Oficina del Fiscal del Estado de Illinois. Más información y formularios de reclamo se pueden obtener de: Crime Victims Compensation Program, Office of the Attorney General, Illinois, 100 West Randolph Street, 13th Floor, Chicago, Illinois 60601, llame: (312) 814-2581.

### RECUPERACION DE PROPIEDAD
El Departamento de la Policia de Chicago debe ser notificado *INMEDIATAMENTE*, llamando al número 911, cuando propiedad reportada como perdida o robada es recuperada.

### TARJETAS DE CREDITO - CHEQUES, PERDIDOS O ROBADOS
Notifique inmediatamente por teléfono a la compañía que le expidió la tarjeta para reducir las posibilidades de ser responsable por el uso desautorizado de su tarjeta de crédito o cheque perdido o robado. Se sugiere que usted también informe por escrito a la compañía que le expidió la tarjeta de crédito o banco como medida de precaución para asegurar la notificación adecuada.

CPD-11.380, Part 3-Spanish-(Rev. 6/04)        RETENGA ESTA NOTIFICACION PARA SU ARCHIVO PERSONAL

**Kimyuna Jackson M Ed. Special Education**

6720 S Jeffery Blvd. Apt 611
Chicago Il 60649
Phone: 312-834-1016

▶ **PHD Christopher Koch**

Illinois State Board of Education
state.superisbe.net
Phone: 217-782-2221

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Due Process Compliant**

This complaint entitled Due Process is an formal compliant with alleged legal substance. However, there is no pending legal action in any Illinois court. The parent of the minor child Jabari Lamar Jackson is requesting that Chicago Public Schools gives the parent of the minor child Jabari Lamar Jackson the funding that they have received for educating him this school year 2014-2015 .Jabari Lamar Jackson entered Wadsworth Elementary School on or before Sept 3, 2014 with an Independent Education Evaluation this is explained under IDEA Sec. 300.502 Independent educational evaluation means an evaluation conducted by a qualified examiner whom is not employed by the public agency responsible for the education of the child in question. This evaluation concluded Jabari Lamar Jackson as Developmental Delay ages 3-9 needing continuous educational services from school being either public or private. Therefore, he is labeled as a special education student and Chicago public schools are receiving funds to educate him as such. This wasn't being done as of the date 1/6/2015 when he was sexually assaulted while in attendance at Wadsworth Elementary School.

1. On September 23, 2014 the parent of the minor child Jabari Lamar Jackson submitted a letter to Wadsworth Elementary School concluding that Jabari Lamar Jackson is diagnosed with developmental delay and follows up with developmental pediatrician Dr. Desch and is in need of special education services in the next 14 days.

2. On 10/08/2014 the parent of the minor child named Jabari Lamar Jackson received 2 letters from Wadsworth Elementary School. The first letter had been Chicago Public Schools Parent/Guardian Notification of Conference which explains that there would be a conference to discuss Jabari Lamar Jackson educational needs. The second letter states as written: that on 8/29/2014 Jabari's IEP (dated 05/23/2013) from Maywood School District was reviewed. The Chicago Public Schools is unable to implement the above referenced IEP as it is written The following services will be provided until the new IEP is developed:

   List comparable services here: Mathematics and Reading/Language arts from diverse learner teacher and speech language therapy from speech pathologist. An IEP meeting will take place on 10/17/2014, 10:30 AM, at Wadsworth STEM, room 209. This letter had been written and signed by the case manager Janelle Harper.

3. On 10/17/2014 the parent of Jabari Lamar Jackson attended such meeting and spoke with all listed individuals present. Please be advised that this meeting represented a formal IEP setting. However there had been no IEP meeting as written by Janelle Harper the case manager of Wadsworth Elementary School. The parent of the minor child did sign a consent for Revaluation on 10/17/2014 and received an assessment plan.

4. On 10/29/2014 the parent of the minor child submitted a request in writing for status of comparable services which Jabari Lamar Jackson was supposed to receive within 10 days from his start date of school. To this day, 12/3/2014 the parent of the minor child named Jabari Lamar Jackson hasn't received any information on whether or not Jabari Lamar Jackson is receiving such services. This same letter also requested that Janelle Harper comply with the IEP meeting as written would take place on 10/17/2014.

5. The response from Janelle Harper which is a case manager for Wadsworth Elementary School had been another Consent for Reevaluation which had already been signed on 10/17/2014 by the parent of the minor child named Jabari Lamar Jackson.

6. On 11/4/2014 the parent of the minor child submitted a second request in writing of the days in which the minor child Jabari Lamar Jackson had been receiving those comparable services, and ask that and IEP meeting occur within 20 school days from this day based on the letter written on 10/17/2014. The 20 school days have yet to pass. But, there is still no response in regards to whether or not the minor child Jabari Lamar Jackson is receiving those comparable service in which he had been eligible to receive until a valid IEP is written.

7. My charges are that Janelle Harper a case manager for Chicago Public Schools is attempting to elude the parent of the minor child to believe that he is receiving comparable education services as written in her letters, and in reality there is no special education (Diverse Teacher) or speech language therapy occurring at Wadsworth Elementary School. If so then the case manager whom represents Chicago Public schools would comply with the parent of the minor child Jabari Lamar Jackson request for dates in which such comparable services will occurs. Which has now caused him to be sexually assaulted on this school campus.

8. The fact of the matter is the parent of Jabari Lamar Jackson based all her findings on letters written by Janelle Harper whom doesn't seem to be complying with policies and procedure that she wrote in letter format to the parent Kimyuna Jackson. I am requesting that your organization look into this matter, so that the parent of the minor child Jabari Lamar Jackson can be at ease that her child had been and is currently receiving comparable services, until the case manager Janelle Harper complies with her written notice of and IEP meeting that was supposed to occur on 10/17/2014.

9. Finally, the purpose of having Janelle Harper the case manage response to the parent of Jabari Lamar Jackson had been to make certain that his where about where account for. Until, Jabari's developmental delay receives a diagnosis this child in circumstance unsupervised can be subjected to dangerous situations as with what happen at Wadsworth Elementary School 1/6/2015. It's listed on the police report as criminal sexual abuse report number HV-1061212.In this case Jabari Lamar Jackson will not be returning to this school. The parent of the minor child has spoken with various individuals in the diverse learner department, and no one seems to be able to even assist the parent with transferring the child into another school.

Thank You,

_____

**Kimyuna Jackson M Ed. Special Education**

1/21/2015

 

**THE FAMILY INSTITUTE**
at Northwestern University

*DRAFT*
6-2-14

## PSYCHOLOGICAL EVALUATION

Name:               Jabari Jackson
Date of Birth:      09/18/09 (4-9 years)
Dates of Evaluation: July 8 & 15, 2014

<u>Reason for Referral & Background Information:</u>

Jabari Jackson is a 4-year, 9-month-old African American male. His mother sought psychological evaluation to assess his cognitive, language, adaptive, and emotional/behavioral functioning to assist in planning for an appropriate school program to meet his needs. Jabari has received prior assessments through the school and hospital systems. As such, full background information is not repeated here. School, social, and family functioning is summarized below. Additional details are available in earlier reports.

Jabari's mother, Kimyuna Jackson, served as informant during the clinical interview. She denied substance use during the pregnancy. She stated that she underwent a gynecological procedure at 6 months gestation, and was informed that long-term complications related to cognitive and motor functioning may result for the child. Jabari's motor developmental milestones were reportedly reached within normal limits. However, language acquisition was delayed.

Ms. Jackson reported that Jabari's pediatrician had concerns about possible Autism Spectrum Disorder (ASD) early on. Jabari was referred to a developmental pediatrician, Dr. Desch, for further evaluation. During a recent phone interview, Dr. Desch stated that Jabari did not meet criteria for ASD.

Dr. Desch recommended that Jabari receive an assessment to determine eligibility for early intervention services. This was conducted in March 2012. Jabari qualified for services under the developmental delay categorization. Ms. Jackson stated that the early intervention program was not able to provide a speech/language therapist. As such, she enrolled Jabari in private speech therapy at Loyola Medical Center in April 2012. The following month, an individualized education program (IEP) meeting was held at the Bellwood school district. It was recommended that Jabari be placed in a self-contained classroom in September 2012, and receive speech/language services (60 minutes per week direct, 5 minutes per week consultative). In addition to language skills, goals were to target pre-academics. Accommodations included preferential seating, check for comprehension, and provide models. Additional accommodations listed in the IEP seem to be intended for more advanced students: write assignments on the chalkboard, reduce assignments, allow parental assistance with homework. The IEP additionally included extended school year programming and specialized transportation. Finally, the IEP report noted that a speech/language re-evaluation would be required once Jabari turned age 3, and that an occupational therapy (OT) assessment should also be conducted in fall 2012.

Ms. Jackson related that she chose to postpone Jabari's enrollment in the district's preschool program until the school-based speech/language and OT evaluations were conducted. Although these assessments did not occur, Jabari attended school within the Bellwood district

from January – April, 2013. Since then, he did not participate in any educational or organized social activities until January 2014. At that time, he attended a Chicago Park District recreational program until May 2014. While academic skills were introduced at this site, the instructors did not hold any type of teaching certification.

Ms. Jackson related that Jabari's opportunities for peer interaction are limited. She stated that he tends to imitate other children's behavior. He was said to be reluctant to try novel activities, and to tantrum when he feels he has not succeeded at a task.

With regard to home functioning, Jabari currently lives with his mother in Chicago. He is not in contact with his father. Ms. Jackson related that Jabari requires assistance with daily routines. She stated that he does not consistently follow house rules, and that discipline techniques include removal of privileges and having Jabari stand in a corner. She noted that he spends his days playing outside with her, and visiting his grandmother. She stated that she closely monitors him to ensure his safety. There is a reported family history of bipolar disorder and substance abuse.

## Adjunct Services

As noted above, Jabari has participated in private speech/language services. His therapist, Ms. Yerkey, stated that they began sessions in May 2012. She reported that at that time, he did not have spoken language skills. He has reportedly been slow to grasp new concepts, but has progressed over time. While Ms. Yerkey has observed him to perseverate on topics (trains), and display inconsistent eye contact, he is reportedly eager to interact with peers at the site, and has developed good socialization skills. He tends to imitate behaviors he observes in other children. Consistent with Dr. Desch's impressions, she has not diagnosed ASD. She has temporarily suspended therapy sessions; Weekly appointments will resume in the fall.

Ms. Yerkey recommends that Jabari attend pre-kindergarten in the fall, in a blended classroom. She suggests that 90 minutes per week of speech/language therapy be provided to address spatial concepts, sequencing, 'wh' questions, grammar, and pronoun usage.

## Previous Evaluations:

Jabari received prior evaluations. The Hawaii Early Learning Profile was administered in March 2012. With the exception of gross motor skills, all areas were delayed. More recently (March 2014), the Preschool Language Scale – Fourth Edition was administered by Ms. Yerkey. Jabari received a standard score (SS) of 73 on the Auditory Comprehension subtest, and 79 on the Expressive Communication subtest. He was diagnosed with Receptive/Expressive Language Disorder. For additional information, please see the previous evaluation reports.

## Assessment Procedures:

Clinical interview with Jabari, his parents, developmental pediatrician, speech/language therapist, and school staff; Record review; Gilliam Autism Rating Scale- Third Edition; Behavior Assessment System for Children-2; Schedule for Affective Disorder and Schizophrenia for School-Age Children; Bracken Basic Concept Scale -Third Edition; Vineland Adaptive Behavior Scales – Second Edition; Wide Range Assessment of Visual Motor Abilities; Peabody Picture Vocabulary Test – Fourth Edition; Expressive Vocabulary Test – Second Edition; Differential Ability Scales – Second Edition

**Behavioral Observations:**

Jabari attended two testing sessions. His attention and activity level were markedly better at the initial time of assessment. On both days, his affect was bright. While walking through the hallway, Jabari was observed to place the majority of weight on his toes. Once in the testing office, he independently played with toys while this evaluator conducted clinical and diagnostic interviews with Ms. Jackson. He remained socially related, for instance, showing his mother what he had created in his play. However, he had difficulty modulating t' e volume of his voice, and was quite loud.

Throughout the evaluation, Jabari often repeated phrasing and intonation that he'd heard spoken by his mother and this evaluator during the session, as well as a particular phrase he'd heard in the past. His speech was also significant for repeatedly mentioning CTA trains. He did not provide additional content on that topic.

Jabari appeared to enjoy social interactions during the testing process. He was able to respond appropriately to social bids, and follow this evaluator's gaze. Additionally, no stereotyped behaviors were observed.

Jabari appeared to put forth effort in completing the testing measures. Results generally appear to be a valid assessment of his current functioning.

**Test Results and Interpretation**

*Cognitive Functioning*

Differential Ability Scales - Second Edition

The Differential Ability Scales - Second Edition (DAS-II) was administered to assess Jabari's current level of cognitive functioning. The Average standard score is 100. Results of the Verbal Cluster fell in the Low range, with a SS of 73 (4th percentile). The remaining Clusters were Very Low: Nonverbal Reasoning: SS = 64, 1st percentile; Spatial Reasoning: SS = 55, .1 percentile. Overall, performance fell within the 2-year-old age range.

Jabari received the following subtest T-scores. The mean score = 50, with the average range falling between 43 – 56.

| Nonverbal Subtest | T-score | %ile | Verbal Subtest | T-score | %ile | Spatial Subtest | T-score | %ile |
|---|---|---|---|---|---|---|---|---|
| Picture Similarities | 30 | 2 | Verbal Comprehension | 33 | 4 | Pattern Construction | 19 | .1 |
| Matrices | 25 | 1 | Naming Vocabulary | 35 | 7 | Copying | 25 | 1 |

Jabari's strongest performance fell within the Verbal domain. Receptive language skills were measured by his ability to attend to, process, interpret, and follow oral directions which involved manipulatives. He responded correctly to test items which referred to the objects by name. He had some difficulty determining the correct object when described by its function or categorical grouping. He followed directives involving some prepositions, but had difficulty with two-step commands. Expressive language skills were assessed with a one-word vocabulary test, which required him to name pictured objects. Incorrect responses were often related to the stimulus item, but not specific enough to earn credit.

Tasks comprising the Nonverbal Cluster required Jabari to use abstract and analogical reasoning skills to determine the most salient feature (i.e.; function, appearance) of, and relationship among the presented pictured objects in order to complete visual patterns. He benefitted from the use of manipulatives.

The Spatial scale tapped visual-motor skills. On the Pattern Construction subtest, Jabari was asked to assemble block designs following this evaluator's demonstration. He did not correctly construct items beyond stacking blocks in a single column. On the task that required him to copy designs with paper and pencil, he drew simple figures correctly, (e.g.; line, circle) but demonstrated problems integrating shapes. Additionally, his pencil grip was awkward.

## Bracken Basic Concept Scale-Third Edition-Receptive and Expressive

The Bracken Basic Concept Scale was administered to assess Jabari's knowledge of beginning academic skills using receptive and expressive language. His knowledge of fundamental pre-academic facts (School Readiness Composite [SRC]) was markedly greater than his understanding of higher level concepts (Total Composite [TC]). For instance, he was able to identify many colors, letters, and shapes. However, he had difficulty with items involving sequencing, quantity, and making comparisons among objects related to size, quantity, time, and dimension. Jabari obtained a Receptive SRC SS of 91(27th percentile; Average range), and an Expressive SRC of 80 (9th percentile; Delayed range). The TC scores fell within the Very Delayed range: Receptive: SS = 70, 2nd percentile; Expressive: SS = 62, 1st percentile.

*Language Functioning*

## Peabody Picture Vocabulary Test-Fourth Edition & Expressive Vocabulary Test- 2nd Edition

In light of Jabari's history of language difficulties, the Peabody Picture Vocabulary Test-Third Edition (PPVT-4) and the Expressive Vocabulary Test (EVT-2) were administered to screen expressive and receptive language skills. Results are consistent with performance on the Verbal Composite of the DAS-II and the recent language assessment. Scores on both the PPVT-4 (SS = 76, age equivalent = 3.2) and EVT-2 (SS = 75; age equivalent = 3.1) fell at the 5th percentile and within the Moderately Low range.

*Visual-motor Functioning*

## Wide Range Assessment of Visual Motor Abilities

The Wide Range Assessment of Visual Motor Abilities was administered to assess Jabari's visual-motor skills. The Composite SS of 61 (.9 percentile; well below average range) is commensurate with results the Nonverbal and Spatial Composites of the DAS-II. Jabari's best performance was on the Pegboard subtest (SS = 80, 9th percentile, below average), which required fine motor dexterity and motor speed to insert pegs into a bi-level board. He obtained SSs of 67 (1st percentile, well below average) on the remaining subtests. On the Drawing task, he successfully drew lines to connect 2 endpoints, but did not accurately copy shapes. Jabari had difficulty understanding the task demands of the Matching subtest, which required him to select objects from a field of four that matched the stimulus based on appearance or category.

*Classroom Observation*

4

### Student Observation System

Jabari was observed at the recreational program using a time-sampling method (Student Observation System), qualitative observations, and comparison to classmate. The room was comprised of approximately 14 students and 2 staff. Upon this evaluator's arrival to the classroom, Jabari was at a table with 1 other student. The other tables seated 6 children each. The group was instructed to trace numbers and count objects in their workbooks. While the majority of the students completed the exercise independently, Jabari received help. One instructor provided a higher level of support (including hand-over-hand assistance) than the other. When encouraged to perform tasks more independently, Jabari was able to do so. Even with assistance, he did not complete the assignment in the allotted time.

The children, then, transitioned to another room to practice for an upcoming performance. Jabari helped another student out of his seat. He interacted with peers and staff appropriately. He was among many students who were unclear of their role in the activity. During the time-sampling interval, he exhibited markedly greater levels of impulsivity (e.g., talking out of turn) and overactivity (e.g., out of seat) than the comparison peer.

The Chicago Park District program would not allow for their staff to communicate with this evaluator, or complete rating scales.

### Adaptive Functioning

### Vineland Adaptive Behavior Scales-Second Edition

In light of DAS-II scores ranging from $<1^{st} - 4^{th}$ percentiles, the Vineland Adaptive Behavior Scales-Second Edition (Vineland-II) interview was administered to Ms. Jackson to assess Jabari's level of day-to-day functioning. Scores fell within the Adequate to Moderately Low range, and were greater than expectations based on his measured cognitive ability level. He received the following Cluster scores.

| Domain | Standard Score | Percentile |
|---|---|---|
| Communication | 83 | 13 |
| Daily Living Skills | 87 | 19 |
| Socialization | 85 | 16 |

Age equivalents on the Socialization Cluster ranged from 2.6 – 3.10. Jabari was said to express concern for others, and show interest in peers. He shares when prompted to do so, and is polite.

The age range of Daily Living Skills Cluster was 3.5 – 4.7. Jabari was reported to be helpful with some household tasks. He requires assistance with hygiene and fastening clothing.

Finally, scores on the Communication domain ranged from the 2.6 – 4.4 age level. Ms. Jackson related that Jabari follows directions well. He was noted to have some difficulty with pronoun usage, and has not yet developed written expression skills.

### Diagnostic Measures

### Parent Report Measures:

To assess Jabari's emotional, behavioral, and socio-communicative functioning, the Schedule for Affective Disorder and Schizophrenia for Children (K-SADS) was conducted with

Ms. Jackson, and she completed the Behavioral Assessment System for Children-2 (BASC-2) and the Gilliam Autism Rating Scale- Third Edition (GARS-3). No significant problems were indicated in the areas of attention, activity level, mood, anxiety, or conduct on the K-SADS or BASC-2. The Cognitive Style and Maladaptive Speech subscales of the GARS-3 were significantly elevated, with scaled scores of 14 and 13, respectively. Consistent with background information, endorsed items revealed that Jabari repeats others' speech, repetitively talks about a particular topic (trains), and makes errors with pronoun usage.

Impressions and Recommendations:

Jabari is a 4-year, 9-month-old male. Ms. Jackson related that a medical procedure performed during her pregnancy may have led to cognitive and motor difficulties for him long-term.

Jabari received an initial evaluation in March 2012, and was determined eligible to receive early intervention services under the developmental disability categorization. According to Ms. Jackson, the program was not able to provide speech/language services. As such, she sought private therapy in this area beginning in April or May 2012. Based on the document prepared at the May 2012 IEP meeting, Jabari was to be placed in a self-contained classroom in fall 2012. Goals were slated to target language and pre-academic skills. Extended school year programming and specialized transportation were also included. A school-based speech/language re-evaluation, as well as an OT assessment were to be scheduled once he turned 3 years old. Ms. Jackson chose to postpone Jabari's enrollment in preschool until these assessments were conducted. The evaluations did not occur.

Jabari attended several months of school in winter, 2013 within the Bellwood district. He, then, participated in a recreational program through the Chicago Park District for several months beginning in January 2014. For much of these initial years of school, however, time out of the classroom led to missed opportunities for both learning and socialization.

Results of the current evaluation reveal Jabari's cognitive ability level to fall within the <1st – 4th percentiles. His knowledge of fundamental pre-academic facts (e.g., identifying colors, letters) ranged from the 9th – 27th percentile. While these basic school readiness skills exceed expectations based on DAS-II scores, Jabari had difficulty with higher order concepts (e.g., abstract reasoning, sequencing, making comparisons). Fine motor dexterity was an area of relative strength, while visual-motor coordination was well below age level. On tests of both receptive and expressive one-word vocabulary, Jabari functioned at the early 3-year-old level. Across tests, performance was improved with use of manipulatives.

In light of lower scores on the cognitive ability measure, Jabari's day-to-day living skills were assessed. Based on parent report, his adaptive functioning skills are greater than would be predicted, and ranged from the 13th – 19th percentiles.

Ms. Jackson's ratings on the GARS-3 revealed echolalia and preoccupation with a particular topic (trains). These language patterns were also reported by Ms. Yerkey, and observed by this evaluator. Ms. Yerkey attributes these difficulties to the Receptive/Expressive Language Disorder and lower cognitive level, rather than ASD. Dr. Desch, as well, did not diagnose ASD based on Jabari's presentation. During both the current evaluation and the classroom observation, Jabari was socially related and sought peer interactions. Furthermore, no stereotyped behaviors were evident.

6

Also during the assessment and visit to the recreational program, Jabari exhibited hyperactivity/impulsivity and inattention at times. These symptoms were less problematic during structured activities.

At the recreational program, Jabari required more assistance with academic tasks than most peers, and worked at a slower pace. His level of independence increased with encouragement from a staff member.

In sum, Jabari qualified for early intervention services due to developmental delay. He has also been diagnosed Receptive/Expressive Language Disorder. Communication patterns related to the language disorder and lower cognitive level overlap with ASD symptomatology. However, a socio-communicative disorder has not been made by prior professionals, and is not diagnosed at this time. Specialized services have only been provided in the area of speech/language, and progress has been made. It is expected that with additional assistance, Jabari will make gains in academic and visual-motor functioning, as well. To this end, the following recommendations are offered.

In addition to developmental delay, Jabari qualifies for special education services under the speech/language impairment category. He should begin attending school this fall. It is recommended that he participate in a full-day pre-kindergarten program. Given difficulties with attention and activity level, he will benefit from a highly structured classroom environment with a small student-to-teacher ratio. He will require instruction in fundamental pre-academic skills, as well the application of this knowledge, from a teacher qualified to work with students with cognitive profiles similar to Jabari. To further meet his needs, lessons should be provided at a slow pace. In light of lower scores on tests of cognitive ability, it is recommended that he receive assistance from an aide. This additional help should be provided at a level to promote independence.

The OT assessment that was recommended in the May 2012 IEP report should be conducted within the next 60 days to determine appropriate services to address the visual-motor integration deficits revealed during the current evaluation, as well as any additional OT needs. Extended school year programming and specialized transportation included in the IEP should be continued. Ms. Yerkey suggests that the school program include 90 minutes per week of speech/language therapy to address spatial concepts, sequencing, 'wh' questions, grammar, and pronoun usage.

Jabari's curriculum should include access to typically developing peers to promote socialization, particularly in light of his tendency to imitate others' behaviors. His absence from school has resulted in missed opportunities to develop social skills. As such, he may require group treatment provided by either a school social worker or language therapist to address this area.

During the current assessment, Jabari's performance improved on tasks that involved manipulatives. This hands-on learning approach should be incorporated into his school program.

It is recommended that Jabari's class functioning be assessed after the initial month of school. Should attention, hyperactivity/impulsivity, or socialization issues interfere with his learning, a functional behavior assessment should be conducted, with development of a behavior intervention plan to follow.

It is also recommended that Jabari's cognitive, academic, language, and socio-communicative functioning be re-assessed in one year to determine whether changes to his diagnostic profile and school program are warranted.

Confidential _____ Jackson, Jabari

Jabari should continue to be followed by Ms. Yereks and Dr. Desch. Dr. Desch may determine whether treatment is advisable to address Jabari's gait.

Finally, with regard to home functioning, it is suggested that Ms. Jackson receive parent guidance sessions to further develop the home schedule, and to address disciplinary techniques.

You may contact Dr. Sobel at (847) 733-4300 x 662 with questions regarding this report.

Hollie Sobel, Ph.D.
Licensed Clinical Psychologist

8

# Advocate Medical Group

4440 West 95th Street || Oak Lawn, IL 60453 || amgdoctors.com

September 23, 2014

To Whom It May Concern:

Jabari Jackson (d.o.b. 9-18-09) is a current patient of Advocate Medical Group's Pediatric Ambulatory Clinic at Advocate Children's Hospital, Oak Lawn. Jabari is diagnosed with developmental delay (he also follows with our developmental pediatrician, Dr. Desch). Jabari is in need of special education services at school within the next 14 days. Please make appropriate accommodations for Jabari at school.

Thank you for your attention in this matter. Please call 708-684-3888 with any questions.

Sincerely,

Megan Muscia, D.O.

Advocate Medical Group, Pediatrics

Advocate Children's Hospital, Oak Lawn

Exhibit J

# Chicago Public Schools
# Parent/Guardian Notification of Conference

Date: 02/06/2015          Student's Name: Jabari Jackson          Birth Date: 09/18/2009

Dear Kimyuna Jackson,

In order to discuss the education needs of your child, you are invited to attend a conference to be held at:

Date & Time: 03/30/2015, 01:00 PM          Location: James Wadsworth Elementary School

This conference was originally scheduled for 02/20/2015, 01:00 PM and 03/06/2015, 01:00 PM.

You are a participant on the IEP Team which will meet to address the purpose as indicated in the next section. You have the right to bring other individuals who have knowledge of special expertise regarding your child. If you plan to bring other individuals, please notify the individual indicated below prior to the meeting so arrangements and accommodations for participants can be made. If these meeting arrangements are not agreeable and/or you require an interpreter or translator, please contact the individual indicated below.

The purpose of this conference is:
- Review and/or revise your child's Individualized Education Program (IEP) and determine the child's educational placement.

The invited individuals and their titles are listed below. If one of the individuals listed below is unable to attend due to unforeseen circumstances, the district will designate an appropriate and suitable replacement to attend the IEP meeting. Any student, age 14 ½ and older, must be invited to any meeting if the purpose of the meeting is to consider transition service needs.

| Title | Name |
|---|---|
| District Representative: | Janelle Harper |
| Special Education Teacher or Provider: | Maximilian Li |
| Nurse: | Brenda Carter |
| Regular Education Teacher: | Rhonda Atkins |
| Occupational Therapist: | Kim Johnson |
| Evaluation Representative: | Matthew Pflaum |
| Parent/Guardian: | Kimyuna Jackson |
| Psychologist: | Matthew Pflaum |
| Social Worker: | Benita Whitfield |
| Student: | Jabari Jackson |
| Speech-Language Pathologist: | Jordan Schweizer |

COPY

You and your child have protection under the procedural safeguards. The school district must provide you a copy of the Explanation of Procedural Safeguards once a year. Please contact the district if you need a copy of the Explanation of Procedural Safeguards.

Sincerely,

Janelle Harper

Name: Janelle Harper
Title: Case Manager
School: James Wadsworth Elementary School
School Phone Number: (773) 535-9730

Exhibit K

## RELEASE AND SETTLEMENT AGREEMENT

This RELEASE AND SETTLEMENT AGREEMENT ("Agreement") is made by and between KIMYUNA JACKSON and the BOARD OF EDUCATION OF BELLWOOD SCHOOL DISTRICT 88.

Subject to the terms and conditions of this Agreement, Plaintiff agrees to dismiss the Complaint filed by her, *Kimyuna Jackson v. Village of Bellwood School District 88*, 2013-CV-2900 (Northern District of Illinois) with prejudice, release the Defendant, and comply with certain terms and conditions, as set forth *infra*, in exchange for the Board of Education of Bellwood School District 88's agreement to pay an Independent Educational Evaluation ("IEE") to be provided to Plaintiff's son, Jabari Jackson, and to comply with certain terms set forth *infra*.

### AGREEMENT

1.0     Definitions. When used in this Agreement, the following definitions shall apply.

1.1 Plaintiff. The term "Plaintiff" shall refer to Kimyuna Jackson, on behalf of herself and on behalf of her minor child, Jabari Jackson.

1.2 Jabari. The term "Jabari" shall refer to Plaintiff's minor son, Jabari Jackson.

1.3 Defendant. The term "Defendant" shall refer to the Village of Bellwood School District 88.

1.4 Lawsuit. The term "lawsuit" shall mean any and all allegations or claims against any defendant contained in *Kimyuna Jackson v. Village of Bellwood School District 88*, 2013-CV-2900 (Northern District of Illinois).

1.5 Parties. The term "parties" shall refer to the parties to this Agreement.

1.6 IEE. The term "IEE" shall refer to an Independent Educational Evaluation, contemplated by 34 CFR 300.502.

2.0   Denial of Allegations in the Lawsuit. This action has been brought by Plaintiff against Defendant, alleging a violation of the Individuals with Disabilities in Education Act ("IDEA"), Section 504 of the Rehabilitation Act, the Americans with Disability Act ("ADA") as well as 42 U.S.C. § 1983 ("Section 1983") in relation to the education services provided to Jabari. The Defendant denies each and every allegation of wrongdoing, and deny any violation of the IDEA, the Rehabilitation Act, the ADA, or Section 1983 and, further, deny liability and damages.

3.0   No Admission of Liability. The Plaintiff, Defendant and their respective attorneys acknowledge and agree that the settlement of this claim is not an admission of liability, or wrongful conduct by or on the part of any Defendant and/or Defendant's future, current or former Board members, officers, agents and employees, and shall not serve as evidence or notice of any wrongdoing by or on the part of any Defendant. The parties and their respective attorneys further acknowledge, and agree, that settlement is made to avoid the uncertainty of the outcome of litigation and the expense in time and money of further litigation and for the purpose of judicial economy.

4.0   Subject to Approval by the Board of Education of Bellwood School District 88. The parties agree that all terms contained in this Release and Settlement Agreement are subject to approval Board of Education of Bellwood School District 88. This Agreement cannot be enforced until such time that the Board of Education of Bellwood School District 88 formally approves the Agreement and executes it.

2

5.0     Dismissal of Lawsuit With Prejudice. In consideration of the hereinafter indicated settlement entered pursuant to this Release and Settlement Agreement, and upon advise of counsel, Plaintiff, Kimyuna Jackson agree to dismiss the complaint (Case No. 2013-CV-2900) with prejudice, with each side bearing its own costs and attorneys' fees.

6.0     Release. The Plaintiff, Kimyuna Jackson, on behalf of herself and her minor child Jabari, in consideration for terms specified in Paragraph 8.0, *infra*, agrees, and does hereby voluntarily and without qualification, release, waive and discharge the Defendant named in the lawsuit, including but not limited to the Bellwood School District 88, the Bellwood School District 88 Board of Education, and the Board of Education of Bellwood School District 88, as well as its/their Board members, officers, employees and agents, and all of its/their predecessors, successors, and assigns, for any and all actions, claims, charges, suits, obligations, benefits, compensation, damages or fees of any kind whatsoever existing at the time of the execution of this Agreement, whether or not those actions, claims, charges, suits, liabilities, obligations, benefits, compensation, damages or fees have been raised in this lawsuit and whether or not known to Plaintiff. Plaintiff specifically acknowledge and agree that this release includes any and all claims, causes of action or demands relating in any way to the education of Jabari which could have been raised in any forum. The releases herein do not preclude or prohibit actions to enforce this Agreement.

7.0     Liens. The Plaintiff, Kimyuna Jackson, in consideration for terms specified in Paragraph 8.0, *infra*, agrees to defend, indemnify and hold harmless the Defendant, its agents, attorneys, officers, Board Members and employees from any and all liens or claims made as a result of the settlement.

3

8.0    IEE. The Defendant, pursuant to this Agreement, agrees to pay for an IEE for Jabari, as provided in the following paragraphs.

8.1    The potential providers. Plaintiff shall have sole discretion to one of the following independent providers to have them provide an IEE for Jabari: (1) Dr. Ruth Kraus, 847/559-0595, ruthkrausphd@sbcglobal.net, (2) Dr. Hollie Sobel, 847/733-4300, hsobel@family-institute.org, (3) Dr. Michael Frey, 847/632-0334, shrinkcps@aol.com, (4) Dr. Scott Hunter, 773/702-2227, shunter@yoda.bsd.uchicago.edu, (5) Dr. Rachel Loftin 312/942-2969, rachel_loftin@rush.edu, and (6) Dr. Cynthia Broulliard, 630/355-6533, info@lilfriends.com.

8.2    The procedure. In performing this agreement, the Plaintiff (or her attorney) will, within 14 days of the date that the Defendant executes this agreement, notify Defendnat in writing of her selection as to the independent provider to conduct the IEE. Notice should be sent to Defendant's attorney, Brandon K. Lemley und/or Defendant's Director of Special Education & Student Services, Dr. Kennedi Dixon. The Defendant shall promptly contact the provider to conduct an IEE and — if the provider agrees to provide it — the Defendant shall guaranty payment directly to the provider, so long as Jabari is presented to the evaluation within the time frame specified in Paragraph 8.3. The Defendant shall provide a copy of correspondence it sends to the chosen provider to Plaintiff (through her attorney, Mary Denise Cahill).

60

8.3    Plaintiff's responsibility to present Jabari for an IEE within 120 days. Following Defendant providing a guaranty of payment to the chosen provider, it is Plaintiff's sole responsibility to schedule the IEE and to present Jabari for the IEE. The

4

Parties agree that Jabari must be presented for the evaluation within 120 days of the date

of the execution of this agreement by Defendant, even if the the provider does not

complete his/her/its evaluation within that 120 day period. Should Kimyuna Jackson

fail to present Jabari for an IEE within 120 of the date of execution of this agreement by

Defendant, then Defendant will have no obligation to pay for the IEE.

9.0    No Obligation To Provide Special Educational Services To Jabari.

9.1 Affidavit of Residency. The Plaintiff, in consideration of the terms specified in

Paragraph 8, agrees to provide an affidavit or declaration, sworn under oath by Kimyuna

Jackson, attesting to the dates she and Jabari were residents of the geographical

boundaries of the Bellwood School District 88, and the date that she and Jabari were no

longer residents within the geographical boundaries of the Village of Bellwood School

District 88.

9.2 Defendant Not Providing Educational Services Contemplated by the IEE.  The

Plaintiff, Kimyuna Jackson, on behalf of herself and her minor child, Jabari, in

consideration of the terms specified in Paragraph 8, agrees that Defendant, Bellwood

School District 88, has no obligation to provide any education services to Jabari, including

any of the special education services contemplated by or contained in the IEE.

10.0    Review by Attorney. The parties to this Agreement agree that they have read and

understand this Agreement, and that this Agreement has been reviewed by their

respective Attorneys. The parties to this Agreement agree and understand that no

promises or representations other than those that appear in this contract have been made

to them by the other party or by any attorney representing the other party.

5

11.0 <u>Entire Agreement</u> This Agreement constitutes the entire agreement between the parties to the Agreement, and there are no other covenants, agreements, promises, terms, provisions, conditions, undertakings or understandings, either oral or written, between them.

12.0 <u>Headings</u>. The headings, captions, numbering system, etc. are inserted only as a matter of convenience and may under no circumstances be considered in interpreting the provisions of the Agreement.

13.0 <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which will for all purposes be deemed to be an original and all of which are identical.

14.0 <u>Applicable Law, Place of Performance.</u> This Agreement shall be construed under and in accordance with the laws of the State of Illinois. All obligations contained in this Agreement are to be performed in Cook County, State of Illinois.

15.0 <u>Date of Agreement</u>. This agreement shall be dated on the last date that appears on the execution pages.

16.0 <u>Construction of this Agreement</u> Terms contained herein shall not be construed against a party merely because that party is or was the principal drafter.

17.0 <u>Cooperation In Dismissal of Lawsuit.</u> All parties to this Agreement agree to cooperate in seeking the dismissal of the lawsuit with prejudice, as well as to file of any supplementary documents and to take all additional actions which are consistent with and which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

6

[SIGNATURE ONLY]

By: _____

Kimyuba Jackson, on behalf of herself and
her minor child, Jabari Jackson

Date: ___4/12/2014___

7

BOARD OF EDUCATION OF BELLWOOD
SCHOOL DISTRICT NO. 88,
COOK COUNTY, ILLINOIS

By: _____ 05-05-14
　　Its President

Printed: _____

Date: _____

ATTEST:
By: _____
　　Its Secretary

Printed: JANICE J-Starks

Date: 5-5-14

8

53446

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KIMYUNA JACKSON,

        Plaintiff,

            v.

VILLAGE OF BELLWOOD SCHOOL
DISTRICT 88,

        Defendant.

No. 13 C 2900

Judge Sara L. Ellis

### AFFIDAVIT OF RESIDENCY

I, Kimyuna Jackson, declare under the penalties of perjury as provided under 28 U.S.C. § 1746 as follows:

1.     I am over the age of 18, am competent to make this affidavit, and have personal knowledge of the facts contained in this affidavit.

2.     I am the mother and legal guardian of Jabari Jackson.

3.     From __Oct 1, 2011__ (date) until __2/28/2014__ (date), both Kimyuna Jackson and Jabari Jackson lived at and physically resided at the following address: __3512 adam 1F__

__Bellwood  IL  60104__ (address, city, state, zip code) which is located within the geographical boundaries of the Bellwood School District 88.

9

4.    On  2 | 28 | 2014  (date) both Kimyuna Jackson and Jabari Jackson

moved to the following address:

_6720 S. Jeffery 611_

_Chgo  IL  60649_____ (address,

city, state, zip code) which is located <u>outside</u> the geographical boundaries of the Bellwood

School District 88.

5.    I affirmatively swear that Kimyuna Jackson and Jabari Jackson do not

reside and do not have an intent to reside within the geographical boundaries of the

Bellwood School District 88.

I swear, under the pains and penalties of perjury that the
foregoing statements are true and correct:

_Kemyuna Gake_____
Kimyuna Jackson

_4 / 12 / 2014_____
Date

10

## ILLINOIS STATE BOARD OF EDUCATION
## IMPARTIAL DUE PROCESS HEARING

J.J.,                             ]
Student,                     ]
                                 ]     CASE NO. 2015-0272
               v.               ]
                                 ]     MARY SCHWARTZ
CITY OF CHICAGO PUBLIC     ]     Impartial Hearing Officer
SCHOOLS DISTRICT 299,       ]
Local School District.         ]

## FINAL DECISION AND ORDER

### JURISDICTION

The undersigned hearing officer has jurisdiction over this matter pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, the Illinois School Code, 105 ILCS 5/14-8.02a *et seq.*, and her appointment as hearing officer by the Illinois State Board of Education (ISBE) on January 28, 2015.

### PROCEDURAL BACKGROUND

The parent is representing herself and the student in this matter. The district is represented by Daniel Contreras, who is with the district's due process department. Upon appointment, the undersigned issued several preliminary orders, including a statement of the parties' rights in these proceedings, and also scheduled an initial status conference. During that status conference, the parent asked to amend her due process request, and the district agreed to her request. The parent filed an amended complaint on February 3, 2015[1]. The parties participated in mediation but were unable to resolve the parent's concerns.

The hearing officer held a prehearing conference on March 19th at the district's central office. During the prehearing, the hearing officer reviewed the parties' rights, confirmed that the parent had received a list of legal aid and advocacy organizations, and advised the parent to consider consulting with an attorney. The parent also was advised to contact the Department of Children and Family Services (DCFS) and the Chicago Police Department regarding her allegations that the student had been molested at school. The parent confirmed her intention to represent herself and her son throughout these proceedings. The

---

[1] Although the hearing officer received the amended complaint on February 3rd, the parent sent exhibits to the complaint by mail. The district did not receive those documents, so the hearing officer faxed them to the district on February 9th. Thus, for purposes of the IDEA timeline, the date on which the first amended complaint was filed is February 9th.

district filed a motion to dismiss the parent's amended complaint, asserting that the parent's monetary request for relief is not allowed in IDEA proceedings. The district's motion was denied on April 13th, and the parent was given time to amend her complaint a second time.

The second amended complaint was filed on April 17th, and the prehearing conference was held on May 13th by telephone conference call. The parent requested subpoenas for a Chicago Police detective and a DCFS worker, asserting that their testimony is relevant to whether the student requires a safety plan. The hearing officer prepared the requested subpoenas and maile them to the parent on May 18th.

The district filed a motion on May 15th requesting summary judgment on five of the six issues identified in the parent's second amended complaint. On May 20th, the undersigned granted the district's request on the issue of whether the independent educational evaluation that the parent presented to the to district in Fall 2014 automatically made the student eligible for special education and related services in District 299 upon enrollment. The district's request for summary judgment on the four other issues was denied.

The district filed its required five-day disclosures on May 27th, pursuant to the hearing officer's order. When the parent failed to provide her required disclosures, the district filed a motion to dismiss for failure to prosecute. In the alternative, the district asked the hearing officer to place limits on the parent's questioning of witnesses and entering documents into evidence. In response, the parent asked to withdraw the witness list she had provided at the March 19th prehearing. The hearing officer denied the district's motion and ordered that the parent could conduct direct examination of district witnesses who were also on her preliminary list, could cross-examine all witnesses, and could present herself as a witness by providing a list of questions for the hearing officer to ask her, as had been discussed at the prehearing conference.

The due process hearing proceeded as scheduled on June 3rd. The hearing was held at the student's school. The parent did not present any witnesses at the hearing or ask to enter any documents into evidence. The district requested a directed verdict in its closing argument, stating that the parent had offered no proof on the issues raised in her complaint. The district's request was denied.

Pam Morgan of Wichmann-Klawitter Court Reports was the court reporter for this hearing. No transcript was issued prior to the date of this decision. The testimony referenced below is based on the undersigned's written hearing notes and memory.  In rendering this decision, the undersigned has considered all documents entered into evidence, testimony of the witnesses, the parties' closing

arguments and applicable law.[2] This decision is issued within ten business days after the hearing's conclusion, as required by Illinois law. 105 ILCS 5/14-8.02a(g55)(5).

## ISSUES AND REQUESTED REMEDIES

The issues presented for hearing are: whether the district was required to provide the student with comparable services within 10 days of the first day of school in Fall 2014; whether the district provided comparable services to the student in a timely manner in Fall 2014; whether the district conducted an evaluation and developed an IEP for the student within the timelines for a transfer student; whether the student requires a safety plan to receive a FAPE; and, whether the district has provided/offered the student a FAPE.[3]

As a remedy for the district's alleged denial of a free appropriate public education to the student, the parent requests that the hearing officer order the district to provide her with all the funding it has received for educating the student so that she can educate him elsewhere.

## FINDINGS OF FACT

1. The parent enrolled the student in District 299 on August 29, 2014 for school year 2014-15. (S.D. 204). The parent did not inform District 299 that the student had a prior IEP or any special needs when she enrolled him. (Testimony, case manager). ). Thus, the district placed the student in a regular education full-day preschool classroom. (Testimony, general education teacher). The classroom had one teacher and an assistant. (Id.).

2. Shortly after school began, the student's teacher and school principal informed the case manager of concerns about the student. (Testimony, case manager).[4] The student had difficulty zipping his jacket, opening a milk carton, and was sensitive to noise, aggressive toward peers and did not interact with peers. (SD 5; Testimony, teacher). He also had speech and comprehension problems. (Id.).

3. The case manager attempted to talk with the mother about staff concerns and inquire whether the student had ever had an IEP; however, she had difficulty

---

[2] The district entered its entire evidence binder into evidence at the close of the hearing, pages 1-204. The parent did not provide any documentary evidence at the hearing.

[3] The hearing officer's May 20th Order on the district's request for summary judgment listed the one issue on which summary judgment was granted and the four issues on which summary judgment was denied. However, the Order did not include the one issue on which the district did not request summary judgment: whether the district provided comparable services to the student in a timely manner. That issue remained for hearing and should have been included in the May 20th Order. The issue is included in this Decision.

[4] The case manager has a master's degree in school counseling and has worked as a case manager for the district for over eight years. (Testimony, case manager).

connecting with the mother by telephone. (SD 3; Testimony, case manager). When they did speak, the mother told the district that the student had a prior IEP, which had been developed by the Bellwood, Illinois district. (Testimony, case manager). The case manager contacted the Bellwood district to request the student's IEP, and she received the IEP on September 18, 2014. (SD 1-4, 6).

4.  The case manager reviewed the Bellwood IEP and noted that it had been developed on May 23, 2012 and thus was over a year old. (SD 6-30; Testimony, case manager). The IEP required placement in a self-contained classroom, speech/language services, and special transportation. (SD 22, 23; Testimony, case manager). The case manager uploaded the IEP into the student's records and requested bus services, which automatically notified the school's clinicians of the student's prior IEP and educational needs. (Testimony, case manager).

5.  On September 23, 2014, the parent gave the case manager a doctor's note, which states that the student has a developmental delay and requires special education services "within the next 14 days." (SD 39). Around the same time, the mother also gave the school a psychological evaluation of the student that had been conducted by Hollie Sobel, Ph.D., in 2014, prior to the student's enrollment in District 299. (SD 40-47). Dr. Sobel is with the Family Institute at Northwestern University. (SD 47). The case manager gave the evaluation report to the school's social worker and school psychologist. (Testimony, case manager).

6.  Dr. Sobel's evaluation consisted of: interviews with the student and parent, Bellwood school staff, developmental pediatrician, and speech/language therapist; a review prior assessments for early intervention services; and, standardized assessments of behavior, autism, adaptive functioning, visual-motor functioning, receptive and expressive language, and cognitive functioning. (SD 41).

7.  The student had attended school in Bellwood, Illinois from January to April 2013, at which time the mother withdrew him from school. (SD 40). He did not attend any educational or organized activity until January 2014, when the mother enrolled him in a Chicago Park District program. (SD 41).

8.  On standardized assessments, the student's cognitive functioning varied, with overall functioning within the two-year old range. (SD 42). His "knowledge of fundamental pre-academic facts was markedly greater than his understanding of higher level concepts." (Id.). His visual-motor composite score was at the .9%ile, with sub-test scores ranging from the 1st% to the 9th%ile. (SD 43). His adaptive functioning skills ranged from the 13th to 19th %iles. (SD 45). Dr. Sobel ruled out an autism spectrum disorder and instead found that the student's echolalia and preoccupation with trains was due to a receptive/expressive language disorder and a lower cognitive level. (Id.)

9. The case manager sent two letters to the parent on October 8, 2014. The first letter informed the parent that the school could not implement the May 23rd IEP but would provide the student math, reading, and language arts services and speech/ language therapy until it developed a new IEP.[5] (SD 48; Testimony, case manager). The second letter invited the parent to attend a meeting on October 17th to review available information on the student, determine areas in which he needed to be evaluated, and discuss services that the district would provide until the evaluation was completed. (SD 55).

10. The district's school psychologist reviewed Dr. Sobel's report prior to the October 17th meeting and found that it provided "very valuable information" for determining areas in which the student required evaluation.[6] (Testimony, school psychologist). The district's speech/language pathologist also found the report helpful in determining which assessments she would give the student.[7] (Testimony, speech/language pathologist). The team determined that the student should have vision and hearing screenings, a social assessment, and assessments of his adaptive behavior, social behavior, cognitive functioning, academic performance, and receptive and expressive language skills. (SD 59). The case manager asked the parent if she had concerns related to motor development, and the parent reported that she did not. (SD 60; Testimony, case manager). The parent provided written consent for the evaluation at the October 17th meeting. (SD 58, 61).

11. The school team met with the mother again on October 31st to discuss the teacher's concerns about the student's motor development (SD 63; Testimony, case manager). The student's writing skills were at the "scribbling stage" and thus not developmentally appropriate. (SD 67; Testimony, general education teacher). On an early screening assessment for motor development, the student could not write his name, draw a person with five body parts, skip or stand on one foot for a count of five, or walk on a line. (Testimony, general education teacher). Despite the district's concerns, the parent did not consent to an occupational therapy evaluation. (Testimony, case manager).

12. In early November 2014, the district began providing the interim services described in the case manager's October 8th letter. (Testimony, special education

---

[5] The letter states that the prior IEP was developed on May 23, 2013. (SD 48). However, the case manager's testimony and the IEP clearly support a finding that this is a typographical error and that the prior IEP was developed on May 23, 2012. (SD 7-29).

[6] The school psychologist has a master's degree in education and a national certificate as a school psychologist. He is a licensed school psychologist in Illinois. He has been employed by the district for two years as a school psychologist. (Testimony, school psychologist).

[7] The speech/language pathologist has been employed with the district since November 2014. She has a master's degree in speech/language pathology, a temporary license as a speech/language pathologist, and is on route to a clinical fellowship. (Testimony, speech/language pathologist).

teacher). The special education teacher provided pull-out instructional services in math and reading/language arts to the student three times/week.[8] (Testimony, special education teacher.) He worked with the student on writing, number fluency, and letter sounds. (*Id.*). He also regularly collaborated with the student's regular education teacher to provide guidance on modifications and accommodations, such as additional time to complete work, repeated instructions, and choices in answers. (*Id.*). The student also received modified homework. (*Id.*).

13. The regular education teacher reviewed Dr. Sobel's evaluation and implemented numerous accommodations that she developed in conjunction with the special education teacher.[9] (Testimony, general education teacher). The student had difficulty with sight words, so the teacher added pictures to the "wall words" to support his learning. (*Id.*). She also had the student "pick a friend" to act as a peer tutor and to help guide him. (*Id.*). Because the student was still "at the scribbling stage," she made specific work sheets for him to accommodate his large handwriting. (*Id.*). She also implemented pre-teaching before a lesson to help him comprehend the lesson. (*Id.*).

14. The speech/language pathologist also began providing weekly services to the student in early November 2014 for 60 minutes/week. (SD 51-54; Testimony, speech/language pathologist). She worked with the student on receptive/ expressive language, comprehension, vocabulary building, and following directions. (Testimony, speech/language pathologist).

15. The school psychologist's evaluation included a review of Dr. Sobel's evaluation and the developmental pediatrician's note, two classroom observations of the student, an interview with the parent, an informal academic assessment, and formal assessments of the student's adaptive behavior and social/emotional functioning. (SD 72-75). The formal assessments included the Vineland Adaptive Behavior Scales, Second Edition (Vineland-II) and the Behavior Assessment System for Children, Second Edition (BASC-2). (SD 74, 75). The Vineland-II and the BASC-2 are rating scales, which were completed by the parent and the general education teacher. (*Id.*). Based on the records review and his own assessments, the school psychologist determined that the student has cognitive, academic, adaptive and social delays. (SD 77). Although Dr. Sobel's evaluation had assessed the student's cognitive functioning at the low to very low range, the school psychologist determined that the student's "early academic skills appear to be better than would be expected." (*Id.*). The student

---

[8] The special education teacher has a bachelor's degree and is in an alternative certification program. (Testimony, special education teacher). He has a LBS1 certificate from the ISBE, which is a state special education certificate. (*Id.*).

[9] The general education teacher has two master's degrees, one in early childhood education and the other in assessment and instruction. (Testimony, general education teacher). She is in the process of completing a third master's degree. (*Id.*). She holds a current license with the ISBE. (*Id.*)

has difficulty processing verbal and visual information, difficulty appropriately interacting with peers, and delays in cognitive, academic, and adaptive skills. (*Id.*). The school psychologist completed his evaluation on October 31, 2014. (*Id.*).

16. The district's speech/language pathologist reviewed the student's 2012 IEP, Dr. Sobel's evaluation, and the student's health documents as part of her evaluation. (Testimony, speech/language pathologist). She also conducted a classroom observation and administered standardized assessments. (SD 78, 79). The student's oral motor skills, voice, and articulation skills are within normal limits. (SD 79). Although he understands basic concepts (e.g., direction, shape), he has difficulty with concepts of space, quantity, order, place, and texture. (*Id.*). He also had difficulty repeating a sentence verbatim and maintaining focus during auditorily presented activities. (*Id.*). Overall, his language skills are significantly below average. (SD 80). Based on her evaluation, the speech/language pathologist found that the student has a mixed receptive and expressive language disorder. (*Id.*). The speech/language evaluation was completed by December 18, 2014. (SD 52; Testimony, speech/language pathologist). The date on the computerized report does not reflect the date on which the evaluation was completed. (SD 80; Testimony, speech/language pathologist). The clinician had left the signature/date line open so that she could include the parent's concerns at the eligibility meeting; however, after the parent did not attend, the report was entered and dated on February 6th. (*Id.*).

17. District staff agreed that a social work evaluation should be conducted because there was no social work evaluation in the student's records, even though he had been diagnosed with a developmental delay. (Testimony, social worker). The teacher had also raised concerns about the student's unusual perseveration on trains, and the parent had expressed concern that he needed support to access the general education curriculum. (Testimony, social worker). The district's social worker reviewed the student's records, including the prior IEP, teacher screenings, and records in the student's file.[10] (SD 68, 69). She scheduled two interviews with the parent, but the parent did not keep either appointment. (SD 69; Testimony, social worker). The social worker offered to conduct the interview at the student's home or at a neutral location because the parent refused to attend an interview in the school. (SD 69; Testimony, social worker). The parent agreed to participate in a telephone interview, but only if the interview were tape-recorded. (*Id.*). The social worker would not agree to have the interview recorded, so the assessment was not completed. (*Id.*).

---

[10] The social worker has two master's degrees, one in social work and the other in educational administration. She has a Type 73 certificate fro the ISBE as a school social worker. She also is a licensed clinical social worker.

18. The team agreed that a nursing evaluation was not needed because the parent did not have any health concerns. (SD 49; Testimony, case manager.) The parent was given a referral for vision and hearing screenings. (SD 49).

19. The district recommended an occupational therapy evaluation because the teacher had reported delays in the student's fine and gross motor skills, and outside evaluations confirmed those delays. (SD 67). The case manager called the parent to explain the district's concerns; however, communication "broke down" and the parent became "combative" and swore and screamed at the case manager. (Testimony, case manager). The evaluation was not conducted because the parent would not provide written consent. (SD 89; Testimony, case manager).

20. After the district completed the agreed-upon evaluations, it attempted to schedule a meeting with the parent to review the evaluations, determine eligibility, and if eligible, develop an IEP for the student. (Testimony, case manager). District staff were aware that the meeting had be held before February 4, 2015, which was the last day of the 60-day timeline. (Testimony, school psychologist, social worker, speech/language pathologist). The first meeting was scheduled for January 16, 2015, and a notice of meeting was sent to the parent; however, she did not attend. (SD 81; Testimony, case manager). The district then scheduled meetings for February 6th, February 20th, March 6th, and, March 30th. (SD 81-83; Testimony, case manager, special education teacher, school psychologist, social worker).

21. The parent did not respond to the district's efforts to involve her in the evaluation/IEP process. Therefore, the district proceeded with the March 30th meeting to determine eligibility and develop an IEP for the student even though the parent did not attend the meeting. (SD 83-122; Testimony, case manager, school psychologist, social worker, speech/ language pathologist).

22. The district reviewed Dr. Sobel's psychological evaluation and its own assessments at the March 30th eligibility meeting. (SD 88, 89). It found the student eligible for special education and related services as a student with a developmental delay. (SD 91). After determining eligibility, the district developed an IEP for the student. (SD 95-122). The district considered the student's strengths and academic needs, developmental and functional needs, and communication needs. (SD 96, 97). The IEP includes detailed information about each area of need. (Id.). The IEP includes numerous accommodations and modifications: consultation between the general education teacher and speech/language pathologist; consultation between the special education teacher and the general education teacher for math and reading/language arts instruction and all other academic and non-academic instruction; consultation between the social worker and the special education teacher; visuals to supplement

communication; countdowns and timers; verbal directions in clearly stated steps; frequent eye contact; and, preferential seating. (SD 98-101). The IEP includes accommodations and modifications for classroom, district, and state assessments. (SD 101, 102).

23. The team developed six language arts goals, four math goals, one science goal, and one social science goal. (SD 102-114). There are two speech/language goals, and two goals addressing independent functioning. (SD 114-118). Each goal includes a statement of the student's present level of performance that describes specific information about the student's academic and functional performance. (SD 102-118). The goals and their benchmarks are measureable. (*Id.*). Social work services were not recommended because the social worker was unable to complete her assessment due to the parent's refusal to be interviewed unless the interview was recorded. (Testimony, social worker).

24. The IEP requires 730 minutes/week of special education and related services for the student and consultation between related service providers and general/special education teachers for the 2014-15 school year. (SD 118, 119). For the 2015-16 school year, the student's special education/related service minutes are to be increased to 930 minutes/week. (SD 120).

25. All district staff agreed that the IEP provided the special education and related services the student needed to receive an educational benefit. (Testimony, general and special education teachers, school psychologist, speech/language pathologist).

26. The district mailed the parent a copy of the IEP and the student's evaluations on April 2nd because she had not attended the IEP meeting. The documents were sent by certified mail and returned to the district by the postal service on May 1, 2015. (SD 123-126). The district issued a school placement letter on April 29, 2015, identifying the school at which the student's IEP would be implemented. (SD 127).

27. Although the student is still enrolled in the district, he has not attended school since mid-December. (SD 53, 54; Testimony, general education teacher, speech/language pathologist).

## CONCLUSIONS OF LAW

A state that accepts federal funding for education must ensure that a free appropriate public education (FAPE) is "available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." 20 U.S.C. §1412(a)(1)(A). The school district within in which a student resides is charged with the responsibility of providing the child a FAPE. 105 ILCS 5/14-1.08, 4.01. A

district must comply with the IDEA's procedural and substantive requirements in order to provide to a student a FAPE. *Board of Educ. v. Rowley*, 458 U.S. 176, 206-207 (1982) (*Rowley*). A hearing officer may find that a child was denied a FAPE because of a procedural violation "only if the procedural inadequacies impeded the child's right to a FAPE, significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child, or caused a deprivation of educational benefit." 34 C.F.R. §300.513(2)(i)-(iii).

As to substantive requirements, a school district must develop an individualized education program (IEP) for each student who receives special education and related services. 20 U.S.C. §1414(d). The educational program set out in the IEP must be "individually designed" and "reasonably calculated to enable the child to receive educational benefit." *Rowley*. A district is not required to provide "the best possible education." *Todd v. Duneland Sch. Corp.*, 299 F.3d 899, 905 (7th Cir. 2002.) However, the special education must produce progress, not regression or trivial educational advancement. *Alex R. v. Forestville Valley County Sch. Dist.*, 375 F.3d 603, 615 (7th Cir. 2004).

In a due process hearing, the burden of proof is on the party challenging the student's IEP. *Schaffer v. Weast*, 126 S. Ct. 528, 537 (2005); *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 594 (7th Cir. 2006). Illinois law requires the school district to "present evidence that the special education needs of the child have been appropriately identified and that the special education program and related services proposed to meet the needs of the child are adequate, appropriate and available." 105 ILCS 5/14-8.02(h). Although this provision requires a district to present evidence, it does not place the burden of proof on the district. *Kerry M. v. Manhattan Sch. Dist. #114*, No. 03 C 9349, 46 IDELR 194 (N.D. Ill. 2006).

I. Whether the district was required to provide comparable services to the student within 10 days of the first day of school in Fall 2014:

When a student with a disability who has an IEP that is *in effect* transfers school districts within the same state and within the same academic year and enrolls in the new district, that district must provide the student with a FAPE, "including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the local educational agency adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with Federal and State law." 20 U.S.C. §1414(d)(2)(C)(i)(I); 34 C.F.R §300.323(e) (emphasis added).

Pursuant to Illinois law, when the student's new district receives a copy of the eligible student's IEP before or at the time of enrollment, the district may adopt the IEP without an IEP meeting if the parents are satisfied with the IEP and

the new district determines that the *current* IEP is appropriate and can be implemented as written. 23 Ill. Adm. Code §226.50(a)(1)(A) (emphasis added). Alternatively, if the district decides to develop a new IEP for the student rather than adopting the IEP, the district must provide the parents with written notice of that decision within 10 days after the date on which the student enrolled in the new district. 23 Ill. Adm. Code §226.50(a)(1)(B). The district must also provide comparable services while it is developing the new IEP. *Id.*

If the new district does not receive a copy of the student's *current* IEP or written confirmation of the requirements in the *current* IEP from the previous school district when the student is enrolled, the district shall place the student in a setting that it believes will meet the student's needs until it obtains a copy of the *current* IEP or develops a new IEP for the student. 23 Ill. Adm. Code § 226.50 (a)(2) (emphasis added).

The foregoing federal and state requirements unambiguously apply only to a student with a current IEP. An IEP must be reviewed at least annually, and revised as appropriate, to be current. 20 U.S.C. §1414(d)(4)(A)(i), (ii); 34 C.F.R. §300.324(b)(1)(i),(ii). Before enrolling in District 299, this student had an IEP dated May 23, 2012, which had been developed by his prior Illinois district. (¶ 4). That IEP expired one year later, on May 23, 2013. 20 U.S.C. §1414(d)(4)(A)(i), (ii); 34 C.F.R. §300.324 (b)(1)(i),(ii). The parent withdrew the student from the Bellwood district in April 2013, and he did not attend school in any Illinois district until September 2014, when he began attending District 299. (¶ ¶ 1,7). Because the student did not have a current IEP when he enrolled in and began attending District 299, the district was not required to provide comparable services to the student within 10 days of the first day of school in Fall 2014.

II. Whether the district provided comparable services to the student in a timely manner in Fall 2014:

As discussed above, federal and state transfer provisions and the requirement for comparable services apply only to a student whose IEP is current. See, 23 Ill. Adm. Code §226.50(a)(2). Although the district was not required to provide comparable services, the evidence shows that the district had concerns about the student since the school year began. (¶ 2). Those concerns were confirmed when the district reviewed his 2012 IEP and noted the services that the Bellwood district had provided. (¶ 4). The medical documentation provided by the parent at the end of September alerted the district to the diagnosis of developmental delay, and the comprehensive independent evaluation provided further evidence on the student's functioning. (¶¶ 5, 6, 8).

The parent was informed in a letter dated October 8, 2014 that the district would provide the student special education in math, reading, and language arts and speech/language therapy in the interim period until it developed a new IEP for the student. (¶ 9). Although the parent contends that the student did not

receive these services, the documentary and testimonial evidence shows otherwise. The district provided special education, speech/language therapy, consultation services, and accommodations and modifications in the regular education classroom in a timely manner, beginning in early November 2014. (¶¶ 12-14).

III. Whether the district conducted an evaluation and developed an IEP for the student within the timelines for a transfer student:

The IDEA requires a district to complete an initial evaluation within 60 days of receipt of parental consent for the evaluation, unless the State has its own timeline. 20 U.S.C. §1414(a)(1) (C)(i)(I). Illinois law requires that the evaluation, determination of eligibility, and the IEP meeting must be completed no later than 60 school days after the parent provides written consent for the evaluation. 23 Ill. Adm. Code §226.110(d). In this case, the parent provided written consent for the evaluation on October 17, 2014 (¶ 10). The 60 school day timeline ended on February 4, 2015. (¶ 20).

A school district must provide the parent of a student with a disability an adequate opportunity to participate in developing the student's IEP. *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007); 34 C.F.R. §300.322(a). The district must notify the parent in advance and schedule the meeting at a mutually agreed on time and place. 34 C.F.R. §300(a). If the district is unable to convince the parent to attend, the district may hold the meeting without the parent but must keep detailed records of attempts by telephone and mail to secure parental participation. 34 C.F.R/ §300(c), (d).

The evidence shows that the district's evaluations were conducted within the 60 school day timeline. The school psychologist's evaluation was completed on October 31st, and the speech/language assessment was completed by December 18th. (¶¶ 15, 16). The district scheduled a meeting for January 16, 2015 to review the evaluations, determine eligibility, and develop an IEP and provided a meeting notice to the parent. (¶ 20). The parent did not attend the meeting. (*Id.*).

The district provided the required notices for the February and March meetings; however, the parent neither responded to the meeting notices nor attended the meetings. (¶¶ 20, 21). When the parent did not attend the March 30th meeting, the district determined eligibility and developed the student's IEP without her. (*Id.*). The student did not attend school at all during this time in which the district was trying to complete the eligibility and IEP process for him. (¶ 27). Based on the foregoing evidence, the undersigned finds that the parent was given an adequate opportunity to participate in the IEP process but chose not to do so. Although the IEP was developed outside of the 60 school day timeline, the delay was due to the district's efforts to include the parent in the IEP meeting.

III. Whether the student requires a safety plan to receive a free appropriate public education:

In *Lillbask v. State of Connecticut Department of Education*, the Second Circuit held that the IDEA's broad language that a parent may raise a complaint "on *any matter* relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" included the right to raise safety concerns as an issue. *Lillbask v. State of Conn. Dep't. of Educ.*, 397 F.3d 77, 93; 42 IDELR 230 (2nd Cir. 2005) (emphasis in decision). The court found that the word "any" has an expansive meaning and that some students would be "more vulnerable to injury from certain conditions than their non-disabled peers" and therefore would need special accommodations. *Id.*

The parent provided no testimonial or documentary evidence at hearing to support a finding that this student's disabilities require a safety plan. In fact, the parent did not subpoena or call the witnesses whom she had stated could provide the relevant testimony. She withdrew her witnesses prior to the hearing and chose not to testify herself about these concerns.

The record does not show any evidence that district staff had concerns about the student being vulnerable to any type of injury because of his disability or that his needs required a safety plan. Although the student has cognitive, academic, adaptive, and social delays, his early academic skills are better than would be expected based on the independent evaluation. (¶12). He does have a mixed receptive/expressive language disorder, but there is no evidence that this raised safety concerns. (¶ 13). The same is true regarding the district's concerns about his fine/gross motor skills, which the parent would not agree to have evaluated. (¶ 19). No safety concerns were identified in the student's 2012 IEP or in the doctor's letter or the independent evaluation, which the parent had provided to the district. (¶¶ 4-8). Based on the foregoing, the parent has not sustained her burden of proof on this issue.

IV. Whether the district has provided/offered the student a free appropriate public education:

A free appropriate pubic education is special education and related services that are provided at public expense, that meet state educational standards, and that are provided in conformity with a student's IEP. 20 U.S.C §1401(9). A district must conduct a full, individual evaluation of a student before providing special education and related services to a student. 20 U.S.C. §1414(a)(1)(A). An evaluation must use "a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent" to determine if the child is eligible for special education and related services. 20 U.S.C. §1414(b)(2)(A)(i). The evaluation must be conducted by "trained and knowledgeable personnel," and the student must be assessed in all areas of suspected disability." 20 U.S.C.

§1414(b)(3)(A)(iv), (B) A district must also review existing evaluations, information provided by the parent, and observations by teachers and related services providers as part of a student's initial evaluation or reevaluation. 20 U.S.C. §1414(c)(1)(A)(i)-(iii).

The evidence shows that each of the district's evaluations used a variety of formal and observational tools to gather relevant information about the student. (¶¶ 12, 13). The evaluators also reviewed the outside information provided by the parent and the student's prior IEP. (*Id.*) The district's related service providers are trained in their respective disciplines and hold appropriate credentials to conduct assessments. (Footnotes 6, 7, 10).

An IEP must include a statement of the child's present level of academic achievement and functional performance, measureable annual goals that will meet the child's needs, a description of how the child's progress toward meeting the annual goal will be measured, and a statement of the special education and related services that is to be provided to the child. 20 U.S.C. § 1414(d)(1)(A)(i)(I), (II), (III). Special education is specially designed instruction to meet a student's unique needs. 34 C.F.R. 300.39(a)(1). The IEP must identify any program modifications that will be provided to allow the student to advance appropriately toward his annual goals, including making progress in the general education curriculum. 34 C.F.R. 300.320(a)(4)(i)-(iii).

The evidence shows that the IEP that the district developed for this student includes present levels of performance, academic and related service goals, numerous modifications and accommodations, and consultation between related service providers and teachers (¶17). The IEP requires 730 minutes/week of special education and related services this school year and 930 minutes/week of special education and related services in school year 2015-16. (¶24). District staff agreed that the student could benefit from the educational program proposed in the IEP.

Based on the foregoing evidence, the undersigned finds that the district has appropriately identified this student's special education needs and proposed a program, including special education and related services, from which the student could benefit. The IEP has not been implemented because the student has not attended school since the IEP was developed.

### ORDER

IT IS ORDERED THAT: The district does not need to take any further action as the parent has not sustained her burden of proof in this case.[11]

---

[11] It is noted for the record that the hearing officer received an email from the parent on June 11, 2015, informing the hearing officer that the parent has moved. The email includes the parent's new address, which

## REQUEST FOR CLARIFICATION

Either party may request clarification of this decision by submitting a written request for such clarification to the undersigned-hearing officer within five (5) days of receipt of this decision. The request for clarification shall specify the portions of the decision for which clarification is sought, and a copy of the request shall be mailed to the other party(ies) and the Illinois State Board of Education. After a decision is issued, the hearing officer may not make substantive changes to the decision. The right to request such clarification does not permit a party to request reconsideration of the decision itself, and the hearing officer is not authorized to entertain a request for reconsideration.

## RIGHT TO APPEAL

This decision is binding on the parties unless a civil action is timely commenced. Any party to this hearing aggrieved by this final decision has the right to commence a civil action with respect to the issues presented in the hearing. Pursuant to 105 ILCS 5/14-8.02a(i), that civil action shall be brought in any court of competent jurisdiction within 120 days after a copy of this decision is mailed to the parties.

ISSUED: June 12, 2015

Mary Schwartz
Impartial Hearing Officer
6116 S. University Avenue, 2N
Chicago, Illinois 60637
773.947.0526 (facsimile)
708.912.0755 (cellular)
ihoschwartz@gmail.com

---

is not in Chicago. District's counsel is copied on the email. This decision is being mailed to the parent at the new address that she provided.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Final Decision and Order was sent by certified mail with return receipt prepaid and directed the individuals listed below:

Ms. Kimyuna Jackson
512 Gregory Lane
Glendale Heights, Illinois 60139

Mr. Daniel Contreras, Esq.
Chicago Public Schools, Due Process Dept.
42 W. Madison St., 2nd Floor
Chicago, Illinois 60602

Mr. Andrew Eulass
Due Process Coordinator
Illinois State Board of Education
100 North First Street
Springfield, Illinois 6277-0001

before 6:00 p.m. on June 12, 2015.

Mary Schwartz
Impartial Hearing Officer
6116 S. University Avenue, 2N
Chicago, Illinois 60637
773.947.0526 (facsimile)
708.912.0755 (cellular)
ihoschwartz@gmail.com



Exhibit M

## Consent For Reevaluation

**Date:** 10/17/2014          **Student Name:** Jabari Jackson                **Birth Date:** 09/18/2009
**Student ID:** 50405517     **School Name:** James Wadsworth Elementary School

Dear Kimyuna Jackson,

Each school district shall ensure that a reevaluation is conducted for each child being reconsidered for special education and related services. A reevaluation must occur at least once every three years unless the parent and school district agree that a reevaluation is not needed. A reevaluation may not occur more than once a year, unless the parent and school district agree it is necessary. The purpose of a reevaluation is to determine:

- Whether the child continues to have one or more disabilities;
- The present levels of academic achievement and function performance of the child;
- Whether the disability is adversely affecting the child's education;
- Whether the child continues to need special education and related services; and
- Whether any additions or modifications of the child's special education and related services are needed to enable the child to meet the measurable annual goals in the Individualized Education Program (IEP) and to participate appropriately in the general curriculum, extracurricular activities and other nonacademic activities.

An evaluation considers domains (areas related to the suspected disability) that may be relevant to the educational problems experienced by the individual child under consideration. The nature and intensity of the evaluation, including which domains will be addressed, will vary depending on the needs of your child and the type of existing information already available. The IEP Team, of which you are a member, determines the specific assessments are needed to evaluate the individual needs of your child. Upon completion of your child's evaluation, a conference will be scheduled with you to discuss the findings and determine eligibility for special education and related services.

### PARENT/GUARDIAN CONSENT TO COLLECT ADDITIONAL EVALUATION DATA

I understand the school district must have my consent for the reevaluation. If I refuse consent, the school district may, but is not required to, pursue override procedures through due process. If the school district chooses not to pursue such procedures, the school district is not in violation of the required evaluation procedue. Furthermore, I understand that if I fail to respond to the request for consent, the school district may pursue the reevaluation if the school district made reasonable efforts to obtain such consent. I understand my rights as explained to me and contained in the **Explanation of Procedural Safeguards**. I understand the scope of the evaluation as described on page 2 of this form.

**I give consent          I do not give consent** to collect the evaluation data as described on page 2 of this form.

Signature of Parent/Guardian: _Kimyuna Jaton_     Date: _10/17/2014_

If you have any questions, please contact at (773) 535-0730

_10/28/2014_

_10:30_

Investigation Handoff

N

## Investigation Transition/Handoff Document

| | | | |
|---|---|---|---|
| **Investigation ID:** | 2170400A | **Investigation Name:** | Wadsworth Elementary School |
| **Report Date/Time:** | 03/12/2015 11:57 AM | **Initial Due Date:** | 03/26/2015 |
| **30-Due Date:** | 04/10/2015 | **Final Finding Due Date:** | 05/11/2015 |
| **Status:** | Closed | **Investigation Stage:** | Formal |
| **Final Finding:** | Unfounded | **Date:** | 04/16/2015 |
| | | **Level of Intervention:** | No Service Needed |

The purpose of this transition packet is to document and facilitate the transition of service:
**From:  To:**
The persons/family for whom the services are being transferred are:
The meeting is/was conducted on:  **Date:   at  Time:**
**Address of the meeting:**
**Narrative:**

**Attachments:**
1. Intake Summary
2. Person/Allegations/Relationships/Protective Custody
3. Assessment
4. Notes
5. Not Applicable/Waiver Request

Investigation Handoff

### Child Abuse/Neglect Report - CA/N - Initial Report - Facility

**Intake ID:** 12965055      **Intake Date/Time:** 03/12/2015 10:42 AM

**Investigation ID:** 2170400A      **Investigation Name:** Wadsworth Elementary School

**Report Date/Time:** 03/12/2015 11:57 AM

**Assignment (Open Assignment)**

| Worker ID | Worker Name | RSF | County |
|-----------|-------------|-----|--------|
|           |             |     |        |

**Response Code:** Normal      **Response Indicators:** None
**Language:** English      **Hispanic:** No      **Interpreter Required:** No
**Possible Media/High Profile:** No      **DCFS Ward:** No

**Facility Report**

**Facility Name:** Wadsworth Elementary School **Facility Type:** School
**Contact Name:**
**Facility Address:** **Facility Street Address:** 6650 S Ellis Ave, Chicago, IL 60637-4216
     Mailing: 6650 S Ellis Ave, Chicago, IL 60637-4216
**Facility Phone:** Work:(773) 535-0730

**Subjects**

**ID:** 16064287      **Name:** Unknown, Unknown
**Participant Name:** Unknown, Unknown      **Role:** Adult **Gender:** Unknown
**DOB:**      **Age:**
**Race:** Unknown      **AKA:**
**Legal Outcome:**
**Poss. Disabilities:**
**Address:** **Work:** 6650 S Ellis Ave, Chicago, IL 60637-4216
     **Residence:** Unknown, Unknown, IL
**Phone:**

**ID:** 16064286      **Name:** Brown, Niashia
**Participant Name:** Brown, Niashia      **Role:** Child **Gender:** Female
**DOB:**      **Age:** 8y
**Race:** Unknown      **AKA:**
**Legal Outcome:**
**Poss. Disabilities:**
**Address:** **School:** 6650 S Ellis Ave, Chicago, IL 60637-4216
     **Residence:** Unknown, Unknown, IL
**Phone:**

**ID:** 16049625      **Name:** Jackson, Jabari
**Participant Name:** Jackson, Jabari      **Role:** Child **Gender:** Male
**DOB:** 09/18/2009      **Age:** 5y
**Race:** Blk/African Am      **AKA:**
**Legal Outcome:**

**Poss. Disabilities:**
**Address:**          **Incident:**    6650 S Ellis Ave, Chicago, IL  60637-4216
                      **Residence:**   6720 S Jeffery Blvd Apt 611, Chicago, IL  60649-1080
**Phone:**

---

**Allegation/Relationships**

| Alleged Perp | Relationship | Alleged Victim | Allegation |
|---|---|---|---|
| Unknown, Unknown | School Staff (Certified) | Jackson, Jabari | 74-Inadequate Supervision |
| Unknown, Unknown | School Staff (Certified) | Brown, Niashia | 74-Inadequate Supervision |

---

**Narrative**

Reporter called to report possible inadequate supervision of her child, Jabari, and another child, at Jabari's Pre-K school, Wadsworth Elementary School in Chicago.

Reporter states that Jabari came home from school on 1-6-15, and told Reporter that a girl at the school had put his hands in Jabari's pants and "touched his bootie", and that now "his bootie hurts." Jabari stated that this child was Niasia Brown and that she was "taller than you and me" (meaning she was taller than Jabari and Reporter.)

Reporter says she made a report to the Chicago Police Dept, and took Jabari for a physical exam, which was unremarkable. Reporter says the police referred Jabari to the Chicago Children's Advocacy Center, and Jabari was interviewed by several people there, including OPWI. Reporter saysOPWI told Reporter that it was obvious that someone "sexually abused" Jabari. Reporter says she notified the school of all above and school staff did say they have an 8 yo student named Niashia Brown. The school expressed concerns about how Niashia would have had contact with Jabari, as their classrooms are on different floors. Jabari's is on the first floor and Niashia's is on the second. Jabari had told Reporter that this happened on the 2nd floor.

The school told Reporter that they were going to call DCFS to investigate and determine if school staff inadequately supervised the two children. Reporter learned today that the school never called.

Reporter has no idea which staff should've been supervising both children when the incident allegedly occurred. At this time, a report will be taken on one unknown staff. If two staff should be indicated, another report would need to be made on the second perpetrator.

Reporter had no information about the staff or Niashia.

Reporter says Jabari does have developmental delays.

Reporter denied knowing of any disabilities, akas, safety concerns, Native American ancestry, substance abuse or domestic violence issues, positive supports, past DCFS involvement, previous child deaths involving this family, or previous physical injuries to the children from abuse or neglect, other than any listed above regarding Jabari.

Please note the pending report on Reporter for a risk of harm to Jabari.

Reporter did not have OPWI's number, but says she can obtain this for the DCFS investigator.

Reporter says she removed Jabari from the school after the incident, and Chicago Public Schools have ignored Reporter's request for a transfer to a new Pre-K program for Jabari.

Note- Wadsworth Elementary may also be known as Wadsworth STEM school. LEADS = insufficient informatin.

---

**Non-Involved Relationships**

| Adult/Both | Relationship | Child/Both |
|---|---|---|

**Investigation Handoff**

**Reporters**

| | | |
|---|---|---|
| **Reporter:** | Jackson, Kimyuna | **Reporter Type:** Mother/Mother Substitute |
| **Reporter Group:** | Family | |
| **Address:** | **Residence:** 6720 S Jeffery Blvd Apt 611, Chicago, IL 60649-1080 | |
| **Phone:** | **Cell:** (312) 834-1016 | |
| **Agency:** | | |

| | | |
|---|---|---|
| **OPWI:** | Wellington, Arnold | **Reporter Type:** Other Social Services |
| **Reporter Group:** | Social Services | |
| **Address:** | | |
| **Phone:** | | |

**Intake ID:**  12965055                 **Intake Name:** Wadsworth Elementary School
**Printed By:**

## Child Abuse/Neglect Report - CA/N - Related Information - Facility

**Intake ID:** 12965087

**Intake Date/Time:** 03/12/2015 12:01 PM

**Investigation ID:** 2170400A

**Investigation Name:** Wadsworth Elementary School

**Report Date/Time:** 03/12/2015 11:57 AM

### Assignment (Open Assignment)

| Worker ID | Worker Name | RSF | County |
|-----------|-------------|-----|--------|

**Response Code:** Normal
**Language:** English
**Possible Media/High Profile:** No

**Response Indicators:** None
**Hispanic:** No
**DCFS Ward:** No

**Interpreter Required:** No

### Facility Report

**Facility Name:** Wadsworth Elementary
**Contact Name:**
**Facility Address:**

**Facility Type:** School

**Facility Street Address:** 6650 S Ellis Ave, Chicago, IL 60637-4216
**Mailing:** 6650 s ellis ave, chicago, IL

**Facility Phone:**

### Subjects

**ID:** 16049625
**Participant Name:** Jackson, Jabari
**DOB:** 09/18/2009
**Race:** Blk/African Am
**Legal Outcome:**
**Poss. Disabilities:**
**Address:**
**Phone:**

**Name:** Jackson, Jabari
**Role:** Child  **Gender:** Male
**Age:** 5y
**AKA:**

### Allegation/Relationships

| Alleged Perp | Relationship | Alleged Victim | Allegation |
|--------------|--------------|----------------|------------|

### Narrative

No added allegations nor participants. Reporter wanted DCP to know of the Assigned Detective for the case. Chicago Police Detective Arnold E Weddington Jr. Detective for Chicago PD Special Investigation Unit. 1240 D Damon Chicago Il 312/498-3811. PD Report number is HY106212.

### Non-Involved Relationships

| Adult/Both | Relationship | Child/Both |
|------------|--------------|------------|

**Investigation Handoff**                                    **Page 6 of 29**

**Reporters**

| | | |
|---|---|---|
| **Reporter:** | Jackson, Kimyuna | **Reporter Type:** Mother/Mother Substitute |
| **Reporter Group:** | Family | |
| **Address:** | | |
| **Phone:** | **Cell:** (312) 834-1016 | |
| **Agency:** | | |

**Intake ID:**  12965087                **Intake Name:** Wadsworth Elementary
**Printed By:**

Investigation Handoff

### Person/Allegations/Relationships/Protective Custody

**Subjects**

| | | | |
|---|---|---|---|
| **ID:** | 16064287 | **Name:** | Unknown, Unknown |
| **Role:** | Adult | **Gender:** | Female |
| **DOB:** | 03/12/1993 | **Age:** | 22y |
| **Race:** | Unknown | **AKA:** | |
| **Marital Status:** | Never Married | | |
| **Burgos:** | No | | |
| **Poss. Disabilities:** | | | |
| **Address:** | Residence : Unknown, Unknown, IL | | |
| | Mailing : 6650 S Ellis Ave, Chicago, IL  60637-4216 | | |

**Phone:**

| | | | |
|---|---|---|---|
| **ID:** | 16064286 | **Name:** | Brown, Niashia |
| **Role:** | Child | **Gender:** | Female |
| **DOB:** | 03/12/2007 | **Age:** | 8y |
| **Race:** | Blk/African Am | **AKA:** | |
| **Legal Outcome:** | | | |
| **Burgos:** | No | | |
| **Poss. Disabilities:** | | | |
| **Address:** | Residence : Unknown, Unknown, IL | | |
| | School : 6650 S Ellis Ave, Chicago, IL  60637-4216 | | |

**Phone:**

| | | | |
|---|---|---|---|
| **ID:** | 16049625 | **Name:** | Jackson, Jabari |
| **Role:** | Child | **Gender:** | Male |
| **DOB:** | 09/18/2009 | **Age:** | 5y |
| **Race:** | Blk/African Am | **AKA:** | |
| **Legal Outcome:** | | | |
| **Burgos:** | No | | |
| **Poss. Disabilities:** | | | |
| **Address:** | Residence : 1897 Somerset Dr, Glendale Heights, IL  60139-4014 | | |
| | Residence : 6720 S Jeffery Blvd Apt 611, Chicago, IL  60649-1080 | | |
| | Residence : 8331 S Ingleside Ave Apt 2, Chicago, IL  60619-5903 | | |
| | School : 6650 S Ellis Ave, Wadsworth STEM School, Chicago, IL  60637-4216 | | |
| | Incident : 6650 S Ellis Ave, Chicago, IL  60637-4216 | | |
| **Phone:** | Alternative : (773) 535-0822 | | |

---

**Allegations/Relationships**

| | | | |
|---|---|---|---|
| **Alleged Perpetrator:** | Unknown, Unknown | **Relationship:** | School Staff (Certified) |
| **Alleged Victim:** | Jackson, Jabari | | |
| **Allegation:** | 74-Inadequate Supervision | | |
| **Sub Types:** | | **Finding:** | Unfounded |

**List all evidence that suggests an incident occurred and that the alleged perpetrator is responsible:**
A VSI was conducted on 1-20-15, due to the same outcry made in this investigation.
**List all evidence that suggests an incident did not occur or that the alleged perpetrator is not responsible:**
The investigation was suspended, due to no information being obtained during VSI.
**Rationale:**

The acv in this case attended Wadsworth Elementary school. Accusations were made by the acvs mother, following an alleged disclosure by the acv. The acvs mother contacted CPD, a VSI was conducted, no information was obtained, and the investigation was suspended by CPD. This worker met with the acvs mother, who stated that she reported the accusations in this investigation to CPD and CPS in January 2015, and nothing was done. The mother stated that she filed a grievance (2015-0272) against CPS, becasue she feels that nothing was done about her outcry that she made against CPS staff for allegedly allowing her son to be fondled on CPS property. This worker attempted to engage Jabari, but he was preoccupied with playing his video game. Based on this information, this worker informed Jabari's mother that a recommendation to unfound this investigation will be made.

| | | | |
|---|---|---|---|
| **Alleged Perpetrator:** | Unknown, Unknown | **Relationship:** | School Staff (Certified) |
| **Alleged Victim:** | Brown, Niashia | | |
| **Allegation:** | 74-Inadequate Supervision | | |
| **Sub Types:** | | **Finding:** | Unfounded |

**List all evidence that suggests an incident occurred and that the alleged perpetrator is responsible:**
A VSI was conducted on 1-20-15, due to the same outcry made in this investigation.

**List all evidence that suggests an incident did not occur or that the alleged perpetrator is not responsible:**
The investigation was suspended, due to no information being obtained during VSI.

**Rationale:**
The acv in this case attended Wadsworth Elementary school. Accusations were made by the acvs mother, following an alleged disclosure by the acv. The acvs mother contacted CPD, a VSI was conducted, no information was obtained, and the investigation was suspended by CPD. This worker met with the acvs mother, who stated that she reported the accusations in this investigation to CPD and CPS in January 2015, and nothing was done. The mother stated that she filed a grievance (2015-0272) against CPS, becasue she feels that nothing was done about her outcry that she made against CPS staff for allegedly allowing her son to be fondled on CPS property. This worker attempted to engage Jabari, but he was preoccupied with playing his video game. Based on this information, this worker informed Jabari's mother that a recommendation to unfound this investigation will be made.

---

**Non-Involved Relationships**

| Adult/Both | Relationship | Child/Both |
|---|---|---|

**Incident Information**

| | |
|---|---|
| **Incident Date:** | 01/06/2015 |
| **Incident Address:** | 6650 S Ellis Ave Chicago , Illinois 606374216 Cook |

**Protective Custody**

---

### ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
#### Supervisory Note

**Investigation Name:** Wadsworth Elementary School      **ID:** 2170400A

**Worker Contacted:** ARMSTRONG, PATRICK      **Worker ID:** 
**Supervisor:** SMITH, SUSAN
**Sub-Category:** Supervisory Consultation
**Contact Type:** Other
**Date of Contact:** 03/12/2015      **Time of Contact:** 01:38 PM

---

**Record significant events involving supervision in this case.**

**Created Worker:** JONES, DELORES      **Created On:** 03/12/2015 01:38 PM
**Narrative:**
The case is assigned to Patrick Armstrong
Contact the reporter and review the narrative
Assess the safety of the child victim. See any other children in the home and interview as appropriate.
Contact and interview the parents,
Provide the perpetrator with a cants 8 letter and appeal pamphlet
Complete substance abuse screen, domestic violence screen and home safety assessment
Collateral contact are needed
Complete leads and cants data check and prior history on all adults residing in the home.
Follow procedure 300 pertaining to the allegation
Consult supervisor if a critical decision is needed

---

**CERTIFICATION:**
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

---

SMITH, SUSAN          08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/12/2015 | **Time of Contact:** | 08:00 PM |
| **Contact Type:** | In Person | | |
| **Sub-Category:** | Child Victim | **Attempt:** | Yes |
| **Interviewee(s):** | Jackson, Jabari (DOB: 09/18/2009) | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

| | |
|---|---|
| **Location:** | Parent/Guardian Home |
| **Address of Interview:** | |
| **Telephone:** | |

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK          **Created On:** 03/13/2015 12:32 AM
**Narrative:**
This worker made a good faith attempt to meet this mandate at this multi unit building, with a locked entrance door, and an intercom system.  This worker rang the only bell located in the directory for "Jackson", but no one responded.  This worker was unable to gain access into this building.

**CERTIFICATION:**
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

ARMSTRONG, PATRICK                    08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School  **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/12/2015 | **Time of Contact:** | 08:00 PM |
| **Contact Type:** | Phone | | |
| **Sub-Category:** | Reporter | **Attempt:** | Yes |
| **Interviewee(s):** | JACKSON, KIMYUNA (DOB: 09/01/1975) | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

| | |
|---|---|
| **Location:** | Other |
| **Address of Interview:** | |
| **Telephone:** | |

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK          **Created On:** 03/13/2015 12:33 AM

**Narrative:**
This worker attempted to contact the above parent of Jabari, but the above was unavailable.

**CERTIFICATION:**
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

_____          _____
ARMSTRONG, PATRICK                             08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School  **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/12/2015 | **Time of Contact:** | 08:00 PM |
| **Contact Type:** | In Person | | |
| **Sub-Category:** | Child Victim | **Attempt:** | Yes |
| **Interviewee(s):** | Brown, Niashia (DOB: 03/12/2007) | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

| | |
|---|---|
| **Location:** | Other |
| **Address of Interview:** | |
| **Telephone:** | |

**Record significant events and case contacts involving the case.**

**Created Worker:**  ARMSTRONG, PATRICK  **Created On:**  03/13/2015 12:34 AM
**Narrative:**
This worker made a good faith attempt to meet this mandate, but no contact information was available to meet with this minor, and parents, at her residence.

### CERTIFICATION:
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

_____          _____
ARMSTRONG, PATRICK                              08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School  **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/18/2015 | **Time of Contact:** | 01:00 PM |
| **Contact Type:** | In Person | | |
| **Sub-Category:** | School Official | **Attempt:** | N/A |
| **Interviewee(s):** | ▮▮▮▮▮▮ | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

**Location:**                    Work
**Address of Interview:**
**Telephone:**

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK            **Created On:**   03/23/2015 06:11 PM
**Narrative:**
This worker met with the above Wadsworth Elementary School ▮▮▮▮▮▮, who stated that ● knows nothing about this investigation. The above stated that when ● last talked to Jabari's mother, she was yelling and cursing at the above, called the above a BITCH, and hung up the phone on the above. The above stated that as a result of the acvs mothers belligerent behavior, she has been banned from entering this school, or being on school grounds.

The above stated that Jabari was in this school pre-K classroom, but has not been to school since 1-13-15. The above stated that there is always 2 adults in the pre-K classroom. The pre-K students go to the bathroom individually, and are supervised by a teacher at all times. The above stated that the pre-K students are in the same room all day, they eat lunch in their classroom, they do not change classrooms at all. The above stated that the school library is on the 2nd fl., and that is the only reason the pre-K students would leave their room, to go to the library.

The above stated that Jabari's mother does not respond to certified mail from the school. The above stated that the last known address on file for Jabari is 8311 S. Ingleside, apt. 2, Chicago, IL...

**CERTIFICATION:**
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

ARMSTRONG, PATRICK                    08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/18/2015 | **Time of Contact:** | 01:25 PM |
| **Contact Type:** | In Person | | |
| **Sub-Category:** | School Official | **Attempt:** | N/A |
| **Interviewee(s):** | ▮▮▮▮▮▮▮ | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

**Location:** Work
**Address of Interview:**
**Telephone:**

---

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK       **Created On:** 03/23/2015 06:21 PM
**Narrative:**
This worker met with the above Wadsworth Elementary school ▮▮▮▮▮▮▮▮▮▮▮ who stated that ▮▮ school was investigated by DCFS, 2 months ago, for the same allegations. The above stated that Naisha is 4yrs old, not 8yrs old. The above stated that this hotline report is being made by Jabari's mother, because the mother filed a case, 2015-0272, against the Board of Ed, for due process.

The above allowed this worker to observed a video of Jabari;s mother, cursing at school officials, and accusing the schools SPEECH THERAPIST of molesting her son, Jabari.

---

**CERTIFICATION:**
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

_____        _____
ARMSTRONG, PATRICK                      08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/18/2015 | **Time of Contact:** | 01:30 PM |
| **Contact Type:** | In Person | | |
| **Sub-Category:** | School Official | **Attempt:** | N/A |
| **Interviewee(s):** | ▓▓▓▓▓▓▓▓ | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

**Location:** Work
**Address of Interview:**
**Telephone:**

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK          **Created On:** 03/23/2015 06:27 PM
**Narrative:**
This worker met with the above Wadsworth Elementary school ▓▓▓▓ who stated that ▓ was never informed by Jabari's mother about these current accusations. The above stated that on 1-9-15, he was contacted by Wendell Cooper, safety officer for CPS, via phone, at 6pm, stating that a safety plan needed to be done for Jabari, due to another student allegedly groping Jabari.

The above stated that there is always supervision for Jabari and his classmates, in their 1st fl. classroom. The above stated that the 1st grade students are on the 3rd fl. and they never have contact with the pre-K students.

The above stated that because of the acvs ages, he cannot allow this worker to talk to any student without their parents permission.

This worker requested that the above contact the parents of 3 students, that were classmates of Jabari's, as well as the parents of Naisha Brown. The above stated that he will get back to this worker once that is completed.

## CERTIFICATION:
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

ARMSTRONG, PATRICK                    08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/18/2015 | **Time of Contact:** | 01:44 PM |
| **Contact Type:** | Phone | | |
| **Sub-Category:** | Law Enforcement, Other Persons with Information | **Attempt:** | Yes |
| **Interviewee(s):** | Wellington, Arnold | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

| | |
|---|---|
| **Location:** | Work |
| **Address of Interview:** | |
| **Telephone:** | |

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK          **Created On:** 03/23/2015 06:36 PM
**Narrative:**
This worker attempted to contact the above CPD officer, but was informed that the above is on furlough, due to an injury.

**CERTIFICATION:**
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

ARMSTRONG, PATRICK                    08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/18/2015 | **Time of Contact:** | 01:45 PM |
| **Contact Type:** | Phone | | |
| **Sub-Category:** | Law Enforcement | **Attempt:** | N/A |
| **Interviewee(s):** | Haro, Sgt. | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

| | |
|---|---|
| **Location:** | Work |
| **Address of Interview:** | |
| **Telephone:** | |

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK          **Created On:** 03/23/2015 06:35 PM
**Narrative:**
This worker spoke with the above SVU sargent, at the CAC, who stated that officer Weddington was assigned this investigation, and a
VSI was conducted on 1-20-15. The above stated that this investigation has suspended because Jabari did not understand the difference between the truth/lie, and was unable to answer any question asked during the VSI, The above stated that no information was obtained during the VSI, this case was suspended. The above also stated that even if information was obtained, they would not arrest an 8yr old for touching another minor.

**CERTIFICATION:**
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

_____          _____
ARMSTRONG, PATRICK                                      08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School  **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/18/2015 | **Time of Contact:** | 02:00 PM |
| **Contact Type:** | In Person | | |
| **Sub-Category:** | School Teacher/Child Care Provider | **Attempt:** | N/A |
| **Interviewee(s):** | Atkins, Rhonda | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

| | |
|---|---|
| **Location:** | Work |
| **Address of Interview:** | |
| **Telephone:** | |

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK          **Created On:**   03/23/2015 06:58 PM
**Narrative:**
This worker met with the above pre-K teacher, and explained the purpose of this visit. The above waived her right to have a union rep present. The above stated that she has worked for the BOE for 14 years, and has taught pre-K at this school for 6 years.

The above stated Jabari was a student in the aboves classroom, he rode the school bus to school, but he has not been to school since January 2015. The above stated that the bus attendant walked Jabari into the school building, then 1 of 4 TA's in the pre-K program walked Jabari and classmates into their classroom, then into the lunch room, where they ate breakfast, away from the other students. The above stated that Jabari and classmates were supervised by 3-4 TA's, and 3 teachers, in the lunchroom. The above stated that Jabari and classmates are escorted to their classrooms, by the teachers and TA's. The above stated that as Jabari and classmates entered the aboves classroom, the above greets the students, the students to their cubby's, and hand up their coats.

The above stated that on Monday, the pre-K students go to the library, on the 2nd fl., 2 classrooms at time. On Tuesdays, the pre-K students go to gym, 2 classrooms at a time, which is on the 1st fl... Every other Wednesday, the pre-K students go exchange classes, across the hall from one another, for science class, on the 1st fl.. On Thursday, the pre-K students go to music class, one class at a time, on the 3rdl.. On Friday, the pre-K students go to computer class, 2 classes at a time; on the 1st. fl..

The above stated that at no time are the pre-K students unsupervised, or in the halls at the same time as other grades. The above stated that the TA's lead the pre-K students to the other classrooms, with one in the front, and one in the back. The above stated that at times, the KG classes have been in the halls at the same time as the pre-K students, but that is not often.

The above stated that Naisha Brown is not a student in the aboves classroom, and the above does not know this student.

## CERTIFICATION:
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

ARMSTRONG, PATRICK                    08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School  **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/23/2015 | **Time of Contact:** | 07:00 PM |
| **Contact Type:** | Phone | | |
| **Sub-Category:** | Parents/Caretakers | **Attempt:** | N/A |
| **Interviewee(s):** | JACKSON, KIMYUNA (DOB: 09/01/1975) | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

**Location:**            Other
**Address of Interview:**
**Telephone:**

---

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK          **Created On:**   03/23/2015 07:00 PM
**Narrative:**
This worker spoke with the above mother of Jabari, and scheduled a meeting for 9am, on 3-25-15, at 1911 S. Indiana, to discuss this case.

---

**CERTIFICATION:**
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

---

ARMSTRONG, PATRICK                    08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/25/2015 | **Time of Contact:** | 09:30 AM |
| **Contact Type:** | In Person | | |
| **Sub-Category:** | Child Victim | **Attempt:** | N/A |
| **Interviewee(s):** | Jackson, Jabari (DOB: 09/18/2009) | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

**Location:**             Agency Office
**Address of Interview:**
**Telephone:**

---

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK          **Created On:**   03/25/2015 11:48 AM
**Narrative:**
This worker met with the above 5yr old acv, who was pre-occupied with playing his mobile video game. This worker attempted to engage this minor, who was uninterested in conversing with this worker. After several attempts, the above stated that Naisha is a lady, and she touched his booty. This worker asked the above where did this happen. The above stated that it happened in the school, but he was unable to say in what specific area of the school this occurred.

This worker attempted to continue this dialogue with the above minor, but the above resumed playing his video game, and did answer anymore of this workers questions.

---

## CERTIFICATION:
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

ARMSTRONG, PATRICK                    08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/25/2015 | **Time of Contact:** | 09:40 AM |
| **Contact Type:** | In Person | | |
| **Sub-Category:** | Reporter, Parents/Caretakers | **Attempt:** | N/A |
| **Interviewee(s):** | JACKSON, KIMYUNA (DOB: 09/01/1975) | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

| | |
|---|---|
| **Location:** | Agency Office |
| **Address of Interview:** | |
| **Telephone:** | |

---

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK        **Created On:** 03/25/2015 12:24 PM
**Narrative:**

This worker met with the above mother of Jabari, who provided her DL (J250-5117-5845), to confirm her identity. The above stated that Jabari is DEVELOPMENTALLY DELAYED and has a SPEECH DELAY.

The above stated that the day of the incident, her son came home from school, and told the above that "Naisha touched my booty". The above stated that she questions her son about what he said, and he initially said that Naisha is a he, then he said a she, then he said it was a lady, then he said it was a girl. The above stated that she did not know what to believe, so she called CPS headquarters, spoke with a security supervisor, Mr. Cooper, who stated that he will contact school officials, and have them do a safety plan, protecting her son, at all times he is on school grounds.

The above stated that the next day she attempted to contact the assistant principal, to inform the school about the accusations, and obtain a copy of the safety plan, but the AP did not return the aboves phone calls. The above stated that she went up to the school, the same day, and cursed out who ever was listening. The above stated that she took he son out of this school the same day. The above stated that she has since filed a grievance, 2015-0272, against CPS.

The above stated that she went to the police station, who referred her to the CACC. The above stated that she met with Detective Wellington, from the CACC, then took her son to Det. Wellington's office, and her son was examined, and interviewed. The above stated that her sons examination was negative. The above stated that Det. Wellington informed her that he was suspending his investigation, because his son was unable to answer any questions. The above stated that Det. Wellington informed her that Naisha is 8yrs old, her classroom is on the 2nd fl., and they are not seeking criminal charges against Naisha. The above stated that Det. Wellington informed the above that they were not going to arrest the 8yr old child, because the above said that an 8yr old allegedly touched the aboves sons booty.

This worker informed the above that based on the information obtained in this investigation, a recommendation to unfound this case will be made.

---

**CERTIFICATION:**

**Investigation Handoff**

I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

_____          _____
ARMSTRONG, PATRICK                       08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Contact Note

**Investigation Name:** Wadsworth Elementary School **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/25/2015 | **Time of Contact:** | 12:10 PM |
| **Contact Type:** | Phone | | |
| **Sub-Category:** | Law Enforcement | **Attempt:** | N/A |
| **Interviewee(s):** | Wellington, Arnold | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

| | | |
|---|---|---|
| **Location:** | Work | |
| **Address of Interview:** | | |
| **Telephone:** | | |

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK          **Created On:** 03/25/2015 12:32 PM
**Narrative:**
This worker spoke with the above CPD detective, who stated that he just met with Jabari's mother. The above stated that she informed Jabari's mother, again, that his investigation has been closed, because Jabari was unable to articulate what happened to him. The above stated that he met with school officials, and was informed that Jabari, and classmates are never left alone, at any time, while on school grounds. The above stated that he could not arrest an 8yr old minor, based on statements made by Jabari's mother.

This worker informed the above that this worker is making a recommendation to unfound this investigation.

## CERTIFICATION:
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

ARMSTRONG, PATRICK          08/27/2015 (Print Date)

Investigation Handoff

# ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
## Contact Note

**Investigation Name:** Wadsworth Elementary School **ID:** 2170400A

| | | | |
|---|---|---|---|
| **Date of Contact:** | 03/25/2015 | **Time of Contact:** | 12:56 PM |
| **Contact Type:** | Phone | | |
| **Sub-Category:** | Other | **Attempt:** | N/A |
| **Interviewee(s):** | ▬▬▬ | | |
| **Initiator Actor Type:** | DCFS | **Contacted By:** | ARMSTRONG, PATRICK |
| **Others Present:** | | | |

| | |
|---|---|
| **Location:** | Work |
| **Address of Interview:** | |
| **Telephone:** | |

**Record significant events and case contacts involving the case.**

**Created Worker:** ARMSTRONG, PATRICK        **Created On:** 03/25/2015 01:05 PM
**Narrative:**
This worker spoke with the above of the head of the CPS law department, who stated that ▬ office handles all CPS investigation, when the schools inform the above. The above stated that ▬ is unsure if an investigator has been assigned to this school, but he will find out and get back to this worker.

## CERTIFICATION:
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

ARMSTRONG, PATRICK        08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Supervisory Note

**Investigation Name:** Wadsworth Elementary School          **ID:** 2170400A

**Worker Contacted:** ARMSTRONG, PATRICK          **Worker ID:**
**Supervisor:** HAMPTON, SHERRYE T.
**Sub-Category:** Supervisory Consultation
**Contact Type:** In Person
**Date of Contact:** 04/10/2015          **Time of Contact:** 02:30 PM

---

**Record significant events involving supervision in this case.**

**Created Worker:** HAMPTON, SHERRYE T.          **Created On:** 04/10/2015 03:51 PM
**Narrative:**
PSA and CPS conferred and CPS reported that:
Per the information gathered, this appears to be a false report, made in retaliation because the mother is having issues with the school and has filed a grievance against the school.
The mother removed her child from the school and wants the school to find him another school.
The sex abuse outcry has not been substantiated, and the police have suspended their investigation, due to no outcry by the minor at the forensic interview.
CPS to:
Reassess the involved minors for safety/risk
Complete required tasks.
Ensure notifications have been sent, and in file.
Document all required contacts.
Bring to closure.
Contact reporter with recommendation.

---

### CERTIFICATION:
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

HAMPTON, SHERRYE T.          08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Supervisory Note

| | | | |
|---|---|---|---|
| **Investigation Name:** | Wadsworth Elementary School | **ID:** 2170400A | |
| **Worker Contacted:** | ARMSTRONG, PATRICK | **Worker ID:** | |
| **Supervisor:** | HAMPTON, SHERRYE T. | | |
| **Sub-Category:** | Final Supervisory Consultation | | |
| **Contact Type:** | In Person | | |
| **Date of Contact:** | 04/14/2015 | **Time of Contact:** 04:15 PM | |

**Record significant events involving supervision in this case.**

**Created Worker:** HAMPTON, SHERRYE T.      **Created On:** 04/15/2015 02:51 PM
**Narrative:**
Public Service Administrator (PSA) conducted final supervision with Child Protection Investigator (CPI) regarding this case.
PSA agreed with CPI recommended finding.
The teacher for the child victim does not know the other minor and minor is and was not in her classroom to harm the child victim.
Collaterals denied the allegation.
The minor in this case attended Wadsworth Elementary school. Accusations were made by the minor's mother, following an alleged disclosure by the minor that another child touched the minor inappropriately.

The minor mother contacted Chicago Police, a VSI was conducted, no information was obtained, and the investigation was suspended by the police.

The CPS attempted to engage Jabari, but he was preoccupied with playing his video game, and made no outcry.

**CERTIFICATION:**
I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

HAMPTON, SHERRYE T.          08/27/2015 (Print Date)

## ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES
### Supervisory Note

**Investigation Name:** Wadsworth Elementary School  **ID:** 2170400A

**Worker Contacted:** HAMPTON, SHERRYE T.  **Worker ID:**

**Supervisor:** WELCHER, LORI

**Sub-Category:** Supervisory Consultation

**Contact Type:** Other

**Date of Contact:** 04/16/2015  **Time of Contact:** 03:25 PM

**Record significant events involving supervision in this case.**

**Created Worker:** WELCHER, LORI  **Created On:** 04/16/2015 03:27 PM

**Narrative:**

Area Administrator reviewed the above report. Hard File was reviewed. The last visit is noted to be 3-25-15. AA agree with the recommended finding.

**CERTIFICATION:**

I hereby certify that this is an accurate representation of the statements and information obtained from the above interviewee(s).

WELCHER, LORI  08/27/2015 (Print Date)

## Waived Contacts or Contacts Determined to be Non-Applicable

| Required Contact | Reason | Supervisor/Manager | Explanation |
|---|---|---|---|
| Observe Environment where Maltreatment Occurred | Other | HAMPTON, SHERRYE T. | na |
| Collateral Contacts (family identified) | Other | HAMPTON, SHERRYE T. | na |
| Alleged Perpetrator/Offender | Other | HAMPTON, SHERRYE T. | unk perp |
| Other Persons with Information | Other | HAMPTON, SHERRYE T. | na |
| Child Victim | Other | WELCHER, LORI | the teacher for child victim reported that: Naisha Brown is not a student in the aboves classroom, and the above does not know this student. |
| Other Community Professionals | Other | HAMPTON, SHERRYE T. | na |
| CPS in Other States | Other | HAMPTON, SHERRYE T. | na |
| Identified Witnesses (knowledge of incident) | Other | HAMPTON, SHERRYE T. | na |

**CHICAGO POLICE DEPARTMENT**

**ORIGINAL CASE INCIDENT REPORT**

510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(8/08)-C)

**RD #:** HY106212

**EVENT #:** 1500610179

Case ID: 9916533    CASR229

---

**IUCR:** 1563 - Sex Offense - Criminal Sexual Abuse

| | | | | |
|---|---|---|---|---|
| **Occurrence Location:** | 6650 S Ellis Ave | **Beat:** 0321 | **Unit Assigned:** | 0311 |
| | Chicago IL | | **RO Arrival Date:** | 06 January 2015 17:20 |
| | 314 - School, Public, Building | | | |

**Occurrence Date:** 06 January 2015 08:00 - 06 January 2015 15:00

**# Offenders:** 1

---

| **Name:** JACKSON, Kimyuna | | | Female | **DOB:** | 01 September 1975 |
|---|---|---|---|---|---|
| **Res:** | 6720 S Jeffery Blvd | **Beat:** 0332 | Black | **Age:** | 39 Years |
| | Chicago IL | | | | |
| | 312 - 834 - 1016 | | | | |
| | | **Beat:** 5100 | | | |

---

| **Name:** JACKSON, Jabari | | | Male | **DOB:** | 18 September 2009 |
|---|---|---|---|---|---|
| **Res:** | 6720 S Jeffery Blvd | **Beat:** 0332 | Black | **Age:** | 5 Years |
| | Chicago IL | | | | |
| | 312 - 834 - 1016 | | | | |
| | | **Beat:** 5100 | | | |

**Sobriety:** Sober

---

| **Name:** UNKNOWN, Kalesha | | | Female | |
|---|---|---|---|---|
| **Empl:** | Wadsworth Elementary | | Black | |
| | 6650 S Ellis Ave | **Beat:** 0321 | 5'09, | |
| | Chicago IL | | | |

---

| (Victim) | | | ( Offender ) |
|---|---|---|---|
| JACKSON, Jabari | is a    Unknown of | | UNKNOWN, Kalesha |

---

**Chicago Police Department - Incident Report**

RD #: HY106212

Victim Information Provided

Flash Message Sent ? No

EV#10179 JABARI JACKSON (VICTIM) STATED THAT WHILE HE WAS AT WADSWORTH ELEMENTARY SCHOOL IN THE CLASSROOM, KAIESHA UNKNOWN(OFFENDER) PULLED DOWN HIS PANTS AND TOUCHED HIS BUTTOCK WITHOUT MAKING PENETRATION. VICTIM WAS UNABLE TO GIVE DETAILED DESCRIPTION EXCEPT TO SAY THAT THE OFFENDER IS AN F/1 ADULT THAT IS TALLER THAN HIS MOTHER WHO IS 5'9." MOTHER STATED THAT THE VICTIM (HER SON) HAS A DEVELOPMENTAL DELAY. BOARD OF EDUCATION EASLEY #5005 CONTACTED AT 1800 HRS. AREA CENTRAL DET SGT BEN #2225 CONTACTED AT 1805 HRS. VIN GIVEN. COPY OF REPORT FAXED TO AREA CENTRAL.
- STAR#: 13763 NAME: RUBEN ROJAS BEAT: 0311

| | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|
| Approving Supervisor | 1733 | #55581 | FLECHSIG, Mark, E | (PC0Q643) | 06 Jan 2015 18:35 | 003 | |
| Detective/Investigator | 13332 | #49544 | WEDDINGTON JR, Arnold, E | (PC0D524) | 07 Jan 2015 09:56 | 079 | |
| Detective/Investigator | 20076 | #49544 | WEDDINGTON JR, Arnold, E | (PC0D524) | 07 Jan 2015 09:56 | 079 | |
| Detective/Investigator | 40397 | #49544 | WEDDINGTON JR, Arnold, E | (PC0D524) | 07 Jan 2015 09:56 | 079 | |
| Reporting Officer | 11149 | #97366 | CALACE, Christine, N | (PC0X866) | 06 Jan 2015 18:17 | 019 | 0311 |

# CHICAGO POLICE DEPARTMENT
# CASE SUPPLEMENTARY REPORT

## HY106212

10 S. Michigan Avenue, Chicago, Illinois 60653
For use by Chicago Police - Bureau of Investigative Services Personnel Only)

Case Id: 9916833
Sup ID: 10943999 CASR301

| Last Offense Classification/Re-Classification | IUCR Code | Original Offense Classification | | | IUCR Code |
|---|---|---|---|---|---|
| SEX OFFENSE / Criminal Sexual Abuse | 1563 | SEX OFFENSE / Criminal Sexual Abuse | | | 1563 |
| Address of Occurrence | Beat of Occur | No of Victims | No of Offenders | No of Arrested | SCR No |
| 6650 S ELLIS AVE | 321 | 1 | 1 | 0 | |
| Location Type | Location Code | Secondary Location | | | Hate Crime? |
| School, Public, Building | 314 | | | | NO |
| Date of Occurrence | Unit Assigned | Date RO Arrived | Fire Related? | Gang Related? | Domestic Related? |
| 06-JAN-2015 08:00 - 06-JAN-2015 15:00 | 5634 | 06-JAN-2015 17:20 | NO | NO | NO |

| Reporting Officer | Star No | Approving Supervisor | Star No | Primary Detective Assigned | Star No |
|---|---|---|---|---|---|
| WEDDINGTON JR, Arnold | 20076 | BEN, Senora | 2225 | WEDDINGTON JR, Arnold | 20076 |
| Date Submitted | | Date Approved | | Assignment Type | |
| 03-FEB-2015 14:41 | | 03-FEB-2015 17:02 | | FIELD | |

## THIS IS A FIELD INVESTIGATION SUSPENDED REPORT

**VICTIM(S) :**   **JACKSON, Jabari**   **TYPE: Individual** — Juvenile —

Male / Black / 5 Years

**DOB:** 18-SEP-2009

**RES:** 6720 S Jeffery Blvd
Chicago IL
312-834-1016

**SOBRIETY:** Sober

**SUSPECT(S):**   **UNKNOWN, Kaiesha**

Female / Black Years

**DESCRIPTION:** 5'09

**BUSINESS NAME:** Wadsworth Elementary

**BUS:** 6650 S Ellis Ave
Chicago IL

**RELATIONSHIP OF VICTIM TO OFFENDER:**

JACKSON, Jabari   Unknown

**LOCATION OF INCIDENT:** 6650 S Ellis Ave
Chicago IL
314 - School, Public, Building

**DATE & TIME OF INCIDENT:** 06-JAN-2015 08:00 - 06-JAN-2015 15:00

**METHOD CODE(S):** Other

**MAU CODE(S):** Sex Related Incident

**PERSONNEL ASSIGNED:** Detective/Investigator

HY106212
DETECTIVE SUP. APPROVAL COMPLETE

WEDDINGTON JR, Arnold E
**Reporting Officer**

CALACE, Christine N  # 11149  BEAT: 0311

)THER INDIVIDUALS
NVOLVED:  **JACKSON, Kimyuna**  ( Parent/Guardian )

Female / Black / 39 Years

**DOB:** 01-SEP-1975

**RES:** 6720 S Jeffery Blvd
Chicago IL
312-834-1016

RIME CODE SUMMARY: 1563 - Sex Offense - Criminal Sexual Abuse

JCR ASSOCIATIONS: 1563 - Sex Offense - Criminal Sexual Abuse

| | |
|---|---|
| UNKNOWN, Kaiesha | ( Suspect ) |
| JACKSON, Jabari | ( Victim ) |
| UNKNOWN, Kaiesha | ( Suspect ) |
| JACKSON, Kimyuna | ( Parent/Guardian ) |

EPORT DISTRIBUTIONS: No Distribution

IVESTIGATION:

SUSPENDED CASE REPORT

SIU 15-30

R/D was assigned the sexual abuse investigation of Jabari Jackson; R/D learned through his investigation that the victim is developmentally delayed. The allegation stated that while the victim was in class an 8 year old girl by the name of Kaiesha pulled his pants down and touch his butt.

A VSI was conducted with the victim at CCAC, present were R/D, ASA Anthony Kenny and Elizabeth Perez conducting the forensic interview. It was determined that the victim did not understand the concept of a good and bad touch and does not understand the differences between the truth and a lie. He stated that an 8 year old girl touch his booty and peepee. He stated that her name was Kaiesha Jones. The victim conversation was all over the place and he did not understand most of the questions that were being ask.

On 20 Jan 15, R/D relocated to James Wadsworth School and spoke with Mrs. Ronetta Ward (Asst Principal) about the said allegation. She stated that she is aware about the allegation and does not understand how it could happen. She stated that the school has had a problem with the victim?s mother and that she has causes all kinds of problems because she believes the victim is not getting the services he needs. She stated that the victim?s mother has called the Board of Education on the school and has threatened a lawsuit against the school. She stated that the victim?s always has two adults with him at all time and that they are never left alone in the classroom. She stated that there is a student by the name of Kaiesha Jones at the school but they are in two different classes and their classrooms are on two different floors. She related to R/D that the victim will not be returning to Wadsworth School.

Based on R/D investigation, R/D cannot tell if a crime occurred, R/D requests this case be

**HY106212**
DETECTIVE SUP. APPROVAL COMPLETE

SUSPENDED PENDING ANY NEW EVIDENCE.

Illinois State Board Of Education
Impartial Due Process Hearing


J.J.,

Student,

CASE No. 2015-0272

V.

City of Chicago Public

Schools District 299,

Local School District.

Mary Schwartz

Impartial Hearing Officer


### Plaintiff's Response to Defendant's Motion to Dismiss

Now come's Plaintiff with a response to the Defendant's motion to dismiss due to the parent's failure to prosecute. Where there is relevant facts then federal rule's associate with this matter would apply.

1. The fact of the matter is that on January 23, 2015 the district did receive the parent's due process compliant.

2. Shortly thereafter the parties took place in a mediation where the parent only requested that the Defendant provide her with a letter of apology for their actions and a safely plan so that the parties can move forward.

3. The Defendant refused to do such therefore the Plaintiff continue to pursuit the matter.

4. On March 19, 2015 the parties participated in a prehearing conference upon which time the parent gave the Defendant her prepared witness list and other required documents needed to move forward.

5. On March 30, 2015 the Defendant filed a motion to dismiss with such claims that the relief the parent had been seeking could be not provided in such courts.

6. On April 13, 2015 the motion was denied and the Plaintiff then filed an amended complaint.

Illinois State Board Of Education
Impartial Due Process Hearing

7.  On May 13, 2015 by telephone the second prehearing conference was held upon which time the plaintiff requested to add two witness to the witness list.

8.  The Plaintiff admits to not providing updated evidence or documents prior to May 13, 2015 and verbally request that 2 witnesses be added during the pre-hearing conference on May 13, 2015.

9.  The Defendant and the Administrative law Judge saw no relevance, but allowed such if these individuals could show the burden of proof in the Plaintiff case.

10. The Plaintiff admits to not submitting the witness list as these individuals involvement in the case were only based on situations that are irrelevant in this matter.

11. The Plaintiff sees no need for a witness list as she can question the witnesses of the Defendant, and all witnesses that the Plaintiff had the Defendant objected to during the pre-hearing conference on May 13, 2014.

12. The plaintiff sees no relevance in the witness list and only wants to question the witnesses of the Defendant.

Wherefore, the plaintiff request that the witness list be withdrawn based on the objections of the Defendant on May 13, 2014, and the fact that these witnesses are only associated with the Defendant therefore making communication with the Plaintiff impossible in such matters. Plaintiff is only wanting to simply question the witness of the Defendant, and that this motion be denied so that all parties can move forward with the hearing.

Kimyuna Jackson

Illinois State Board Of Education
Impartial Due Process Hearing

CERTIFICATE OF SERVICE, The undersigned certifies that on May 29, 2015, 2015, the undersigned caused this Response to Defendant's Motion to Dismisst to be served on each person listed below, via email and regular mail.

Mary Schwartz Impartial Hearing Officer

6116 S. University Ave., 2N

Chicago, Illinois 60637 ihoschwartz@gmail.com

Daniel Contreras Due Process Attorney

Chicago Public Schools 42 W. Madison, 2nd Floor

Chicago, IL 60602 Phone: 773-553-3817 Email:dcontreras32@cps.edu

Respectfully Submitted,

*Kimyana Jackson*

6720 S Jeffery Blvd Apt 611

Chicago, Illinois 60649

Copied E-mails from Defendant and Plaintiff


Kimyuna Jackson <kimjackson817@yahoo.com> Daniel, This works fine thanks so much. Sent from my iPhone On Mar 24, 2015, at 2:32 PM, Contreras, Daniel <dcontreras32@cps.edu> wrote: Hello Ms. Jackson, During our prehearing conference last week o
To
Contreras, Daniel
Mar 24 at 2:56 PM
Daniel, This works fine thanks so much.

Sent from my iPhone

On Mar 24, 2015, at 2:32 PM, Contreras, Daniel <dcontreras32@cps.edu> wrote:

Hello Ms. Jackson,

During our prehearing conference last week on March 19th you said that you would attend Jabari's eligibility meeting scheduled for March 30th at 1PM if it was held in a location other than Wadsworth Elementary. The original notification for this meeting was sent to you via certified mail on March 17, 2015. This email is to notify you that per your request, the eligibility meeting will be held at the **Colman Network Office located at 4655 South Dearborn St., Room 406, Chicago, Illinois 60609.**

I will be sending a separate email to you and the hearing officer informing her of the time and location of the eligibility meeting, as per her request.

Please let me know if you have any questions. Please also keep in mind the hearing officer's direction to **not copy her** on emails that are about alleged facts of the case or resolution discussions.

--


**Daniel Contreras** l Attorney l Procedural Safeguards & Parental Supports
Office of Diverse Learner Supports +Services l Chicago Public Schools
Office No. 773-553-3817 l Fax No. 773-553-1906 l Email: dcontreras32@cps.edu
<ODLSS_Logo_Horiz_Color.png>
Show original message


CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential, and exempt from disclosure under applicable law. Any dissemination, distribution, or copying of this communication is strictly prohibited without prior permission of the sender. If the reader of this message is not the intended

recipient or if you have received this communication in error, please notify the sender immediately by return e-mail and delete the original message and any copies of it from your computer system.

Reply Reply to All Forward More

Kimyuna Jackson <kimjackson817@yahoo.com> Daniel, I am not going to be able to make the meeting tomorrow. However, I encourage CPS to finally move forward with the writing of the IEP. Since, Matthew is the main influence in regards to the org

To

Contreras, Daniel

Mar 29 at 8:53 PM

Daniel, I am not going to be able to make the meeting tomorrow. However, I encourage CPS to finally move forward with the writing of the IEP. Since, Matthew is the main influence in regards to the organization and development of the IEP I feel positive that his placement will recognize his needs in the areas where his educational development should be strengthened. I attended a meeting similar to this October 17, 2014 where at such time Matthew explained the results of Jabari's IEE and I provided him with the needed feedback to base his conclusions. I am trusting that with Matthew strong input. The writing of this IEP will finally be concluded.

Kim Jackson

Sent from my iPhone